## GOLDIE CLEMMONS v. STATE.

* No. A-586.   Opinion Filed September 28, 1912.

(125 Pac. 704.)

1.  **HOMICIDE—Evidence—Remoteness.** In a case of homicide or of assault with intent to murder, it is competent to introduce evidence of the conduct, acts, and general demeanor of the defendant before the crime for the purpose of proving that he was armed and in a vicious mood, provided such conduct is so near the time of the homicide or assault that it tends to show the state of mind of the defendant at the time of the killing or assault, but it is not competent to introduce evidence of any conduct of appellant so far removed in point of time as not to shed any light upon the case upon trial.

2.  **SAME—Evidence—Presumptions—Provocation.** When the question is as to whether or not a defendant charged with assault with intent to murder or with murder acted upon antecedent malice or fresh provocation, the law will presume that such action was upon the fresh provocation, unless there is evidence tending to connect such antecedent malice with such fresh provocation.

3.  **SAME—Justification—Defense of Another.** The wife has the right to act in the defense of her husband when the facts and circumstances of the case, judging from her standpoint and as they reasonably appear to her, are such as to create in her mind a reasonable apprehension that her husband is in imminent danger of being killed, or receiving serious bodily injury at the hands of his assailant.

(Syllabus by the Court.)

*Appeal from District Court, Muskogee County;*
*John H. King, Judge.*

Goldie Clemmons was convicted of assault with intent to murder, and appeals.   Reversed and remanded.

The case is clearly and correctly stated in the brief of counsel for appellant, which is as follows:

"This is a case in which the appellant was charged in the district court of Muskogee county with the crime of assault with intent to kill by shooting at G. C. Clemmons.   The facts, as disclosed by the record, are:   That G. C. Clemmons and the husband of this appellant are brothers.   They were running a res-

taurant and cold drink stand. G. C. Clemmons had discharged one of the men employed by his brother. The husband of appellant had called a police officer to have G. C. Clemmons arrested for causing the disturbance, and for discharging his help. The two brothers became involved in a difficulty, and, while the police officer was holding the husband of appellant, G. C. Clemmons struck him over the head with a piece of plank. After he made the first stroke, she ordered him not to strike her husband. When he made the second stroke, she shot at him. Her defense was that she shot to frighten, not to kill, G. C. Clemmons. She insisted that her only purpose was to scare him so that he would not strike her husband again. The case was tried on that issue. The shooting was admitted, and the sole issue for the jury to determine was her intention at the time she fired the shot. She and her husband were moving to the place where the difficulty took place, and they had among other effects two revolvers. One the policeman took from her and the other she used when firing the shot for which she was convicted.

"We did not represent the appellant in the trial below, and came into the case after the appeal had been filed in this court. In our opinion the record discloses reversible error, in this: The prosecuting witness, G. C. Clemmons, was permitted over the objection of the appellant to testify that two years prior to this difficulty appellant had fired three shots at him, and appellant herself was compelled, on cross-examination, to answer the question as to whether she had two years prior to this difficulty shot at the prosecuting witness. If she had denied the shooting in this particular case, and that had been her defense, then the testimony as to former shots would probably be harmless error; but, when the sole issue was her intention at the time she fired the shot, it was prejudicial to permit the state to prove that on a previous occasion, two years prior to this time, she had fired three shots at the appellant, and for that reason this testimony constitutes reversible error. On page 11 of the case-made appears the following as part of the redirect examination by the county attorney, to wit: 'Just one other question: Had she ever shot at you before? Answer: Three times, two years ago, after jumping on my mother and beating her up. Question: Did she jump on your mother? Answer: Yes; Dr. Waterford treated her. Mr. Sullivan: I object to the question and ask the answer to be stricken. By the Court: Overruled.' Again, on page 17: Part of the testimony of the appellant herself appears: Question: Did he hit John (referring to her husband)? Answer: He hit him twice. I asked him when he first entered, "Don't hit

John," and, when he hit him, I jerked my gun and shot to scare him. Question: Did you shoot to kill him? Answer: No, sir; I shot to scare him.' Again, on page 19, as part of the cross-examination of the appellant, appears the following: 'Question: Were you shooting at him just for fun the other three times you shot at him? Mr. Sullivan: We object. Question: That's all.'

"This case might have been tried on the theory that she would have a right to defend her husband and would be justifiable in shooting in his defense, but it was not tried on this theory. It was tried on the one issue that she shot to scare him. This is shown conclusively by the instructions of the court appearing on page 25, as follows: 'The defendant has told you that she fired the shot from the automatic pistol, but that she shot to scare G. C. Clemmons, who was having trouble with her husband. It is for you to say, from all the facts and circumstances in the case, whether the defendant shot at the prosecuting witness with the intent to kill him or not. If you have a reasonable doubt of the defendant's guilt, she should be acquitted.' The error complained of in the introduction of this testimony was presented squarely to the court in the motion for new trial in the second paragraph, as appears on page 27 of the case-made.

"We are mindful of the general rule that proof of distinct and independent offenses is admissible if they throw light on the intention of the defendant in the commission of the act for which he is on trial. This is true, even though the testimony may prove separate and independent crime. But the rule is just as well settled that proof of distinct and independent offenses is not admissible on the trial of a person accused of crime where the prior offense is not part of the *res gestae*, and does not shed light on the intention of the defendant in the commission of the acts complained of. The court in the case of *Williams v. State,* 4 Okla. Cr. 523, 114 Pac. 1114, reviewed the authorities on this point, and Judge Furman, speaking for the court, announced the rule as follows: 'It is competent in a case of homicide to put in evidence the conduct, actions, and general demeanor of the defendant before the crime, for the purpose of proving that he was armed and in a vicious humor, provided such conduct is so near the time of the homicide that it tends to show the state of mind of the defendant at the time of the killing.' We most heartily agree with this statement. A better statement of the rule we do not recall ever having read, and, applying that rule to the case at bar, the appellant is entitled to a new trial. Certainly it will not be contended that the conduct of this appellant in shooting at the prosecuting witness two years prior to this

difficulty tends to show the state of mind of the appellant at the time of this shooting. Judge Furman in reviewing the authorities quotes with approval the case of *State v. Miller,* 73 S. C. 279, 53 S. E. 427, 114 Am. St. Rep. 82, in which the court said: 'The general rule is that proof of distinct and independent offenses is not admissible on the trial of a person accused of crime, but there are exceptions to or modifications of this general rule, as where such evidence reasonably tends to show the malice, intent, or motive of the defendant with respect to the crime charged, or where the offense is so clearly connected with the crime charged as to bring it within the rule of *res gestae.'* Judge Furman used the following language, after quoting at length from the leading authorities sustaining the rule announced in the syllabus, which we have quoted: 'It is there laid down that evidence of the character there involved is admissible for the purpose of showing and explaining the movements and general conduct of the prisoner before and after an offense which immediately preceded the one for which he is being tried.' Judge Furman also quotes with approval the language used by Judge Doyle in the case of *Vickers v. United States,* 1 Okla. Cr. 452 [98 Pac. 467], as follows: 'Evidence is admissible that tends directly to prove the defendant guilty, although it may also tend to prove a distinct felony, and thus prejudice the accused.'

"We can easily imagine a state of facts that might have made the prior shooting admissible. Suppose, for instance, that the state had undertaken to prove that the appellant had held malice against the prosecuting witness, that she had threatened to take his life, that she had made an effort to take his life on this occasion as part of her preconceived intentions to take his life, and that on a former occasion she made an effort to carry out her intentions. The appellant then would have been given an opportunity to meet that issue, but no such state of facts is in evidence. The state did not undertake to prove any malice against the prosecuting witness, or any threats made against him. But the state did prove that she two years before shot at him three times. A casual reading of the testimony in this record will convince any one that the jury must have been prejudiced against the appellant, or they would never have returned a verdict finding her guilty. The fact that the punishment was fixed at one year in the penitentiary is proof that it was a compromise verdict. If the jury had been thoroughly convinced that she deliberately attempted to murder her brother-in-law, her punishment would not have been fixed at the minimum, but she would have received the maximum. And this goes to prove that the preju-

dice caused by this testimony of the prior shooting was sufficient to influence the mind of the jury to the extent of giving her the minimum sentence on general principles. A juror that was inclined to hold out for an acquittal would probably be met with the argument that she is a bad woman, the proof shows that she tried once to kill this brother-in-law, and a year in the penitentiary will do her good.

"The members of this court have had sufficient experience in the general practice and in the trial of criminal cases to know that what might seem the most insignificant circumstances are sometimes sufficient to influence a jury to return a verdict of guilty. And the juries frequently convict on general principles. For that very reason the trial court should not permit the introduction of evidence which raises an issue improper in the case. To send a woman to the penitentiary for one year for shooting at a man who is beating her husband over the head with a plank is a very serious matter.

"If we had been defending this woman in the lower court, we would have made the defense that she would have the right to shoot, and that she had the right to take his life in the defense of her husband. That was not the defense made. Yet we feel that this court should take all the facts and circumstances as disclosed by the record into consideration, and that justice should be done this woman. That can only be done her by granting a new trial and letting the case be retried in the lower court on the proper issue, and on such facts as are relevant to the issue."

*Owen & Stone,* for appellant.

*Smith C. Matson,* Asst. Atty. Gen., for the State.

FURMAN, P. J. (after stating the facts as above). We have examined the record in this case carefully, and we find that the facts and questions of law involved are correctly stated in the brief of counsel for appellant. We therefore adopt this brief as our opinion in this case; and for the reasons therein stated the judgment of the lower court is reversed and the cause remanded.

ARMSTRONG and DOYLE, JJ., concur.