SIDNEY STIGALL v. STATE.

No. A-8323. May 21, 1932.
(11 Pac. [2d] 770.)

330

P. A. Chappelle, for plaintiff in error.

The Attorney General, for the State.

CHAPPELL, J.   Plaintiff in error, hereinafter called defendant, was convicted in the district court of Tulsa county of the crime of manslaughter in the first degree in the killing of Dee Freeman, and his punishment fixed by the jury at imprisonment in the state penitentiary for a period of 99 years.

Complaint is first made that the court erred in overruling defendant's motion for a new trial on the ground of newly discovered evidence.   Particular complaint is made on account of the evidence it is claimed the wife of defendant would have given if a new trial had been granted.

An examination of the record discloses lack of diligence on the part of defendant, and the further fact that the proposed testimony of the wife is of such nature as would not have affected the verdict of the jury if offered at the trial.

The granting of a new trial on the ground of newly discovered evidence is always within the sound discretion of the trial court.   Peters et al. v. State, 35 Okla. Cr. 367, 250 Pac. 1032; McColloch v. State, 45 Okla. Cr. 442, 283 Pac. 1026.   Especially would it be so in the case at bar, on account of the weakness of the showing.

The further contention made by defendant is that the punishment is excessive.

Shortly after the crime was committed and defendant was arrested, he was taken to the county attorney's office, where, after being fully advised of his constitutional rights, he made a voluntary statement, in which he said:

"Q. What was the first word brought it about? A. He was with my wife, I told him not to be going with my wife, he got my wife to quit and I have got two children. Q. You said that to him to-night? A. No not to-night, but I told him that. Q. When did you tell him that? A. About a week ago. Q. Was he with her to-night? A. Yes, sir. Q. Of course that made you mad? A. Yes, sir. Q. Where did you get the knife? A. At home. Q. Take it with you? A. I just went home and got it. Q. When did you get it? A. I went and got it to-night. Q. Was that after you saw them together? A. Yes, sir. Q. Now go ahead and tell us about it. A. I went right up to him and said, 'I told you not to be with her and not to bother her any more,' and then he reached his hand in his pocket for his knife and then I got him. Q. How many licks did you hit? A. One. Q. Then what did you do? A. I went back and sat down in the show and stayed there until I got ready to come out. Q. You made up your mind when you saw him with your wife you would get him, is that right? A. Well, I thought it was right. Q. And you took the knife to be prepared? A. Well, I seen him with her and then I went and got it. Q. What kind of a knife was it? A. Butcher knife."

It thus appears from defendant's own statement that he was jealous of deceased, and mad about deceased and his wife being together; that he left them at the theater, went home and got the butcher knife, and came back and cut deceased in the heart. The crime being premeditated and carried out in cold blood, the record presents no reason for reducing the punishment.

For the reasons stated, the cause is affirmed.

EDWARDS, J., concurs. DAVENPORT, P. J., absent.