## SAWYER v. STATE.

No. A-11424.   Oct. 31, 1951.

(237 P. 2d 167.)

Arthur L. Cavanagh, Lawton, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

JONES, J. The defendant, Charles Sawyer, was charged by an information filed in the district court of Comanche county with the crime of murder; was convicted of manslaughter in the first degree; and pursuant to the verdict of the jury was sentenced to serve 50 years in the State Penitentiary; and has appealed.

Only two assignments of error are presented: First, the verdict is not supported by sufficient competent evidence. Second, the court erred in permitting Richard Sawyer to testify, over objection of defendant, concerning prior occurrences between deceased and defendant.

It is undisputed that the defendant, Charles Sawyer, struck his brother, Milford Sawyer, on the head with an iron pipe the night of January 26, 1950, just outside of the home of Milford Sawyer, which blows caused death almost instantly.

There was very little dispute in the evidence of the state and defendant. The proof showed that on the night of January 26, 1950, the defendant met his brother, Tom Ival Sawyer, his nephew, Robert Sawyer, Floyd Gore, and a female by the name of Mildred Hoover at the Big Six Bar in Lawton. These parties stayed at the Big Six Bar drinking beer until the bar closed about 11 p.m. They then drove to the outskirts of Lawton to the home where the deceased, Milford Sawyer, and his brother, Richard Sawyer, were living. Both of these men were in bed when the other individuals arrived. The radio was turned on. A bottle of whiskey was produced and most of the parties, including deceased and defendant, took at least one drink of whiskey. The defendant and Mildred Hoover were dancing when a small dog owned by deceased commenced to bother the girl. Defendant placed the dog in another room and continued dancing with Miss Hoover. The deceased later brought the dog back into the living room where the dancing was taking place, and a fight occurred between the defendant and deceased over the refusal of deceased to take the dog back to the other room where it would not interfere with the dancing. Tom Ival Sawyer entered the fray and commenced to fight with defendant. The deceased, Milford Sawyer, seized a poker and struck the defendant a light blow on the head and chased him out of the back door of the house. Shortly thereafter the defendant threw a large rock through the plate glass of the front door and followed it by throwing objects through the door and window pane. Floyd Gore then went out of the house and called to the defendant. Defendant requested Gore to go back into the house and get his hat and coat. Gore returned to the house and secured the clothing of defendant and took them to him. Defendant then said, "They all hate me, I am going to get them all". While Floyd Gore was out of the house the second time Milford Sawyer left the house. In a few minutes the defendant came into the house and said, "I just killed Milford, he is lying out in the road". He then turned to his brother, Tom Ival Sawyer, and said, "I ought to kill you too". Charles Sawyer then left. The parties in the house did not believe his statement that Milford Sawyer had been killed, but shortly thereafter when they turned on the lights of their automobile, which was parked in front of the house, preparatory to leaving they saw the body of Milford Sawyer lying in the road. He had been struck two severe blows on the head. One on each side of the head. The doctor testified that these blows were struck with a blunt instrument and either of them would have caused the death of the deceased. An investigation of the homicide was

made by officers of Comanche county and the pipe with blood stains on it was found and identified by defendant as the one used by the defendant to kill the deceased.

Mrs. Lena Boone, sister of the defendant, testified that defendant came to her home about two o'clock in the morning; their mother was living with her; that he said, "I killed Milford"; that the witness asked him that if it was dark how did he know whether he had killed Tom or Dick and defendant said, "Well, I know it was him, because when I started to hit him, he saw me and started to jump back".

The evidence of the defendant did not contradict greatly that of the state. The party at the Big Six Bar, the visit to the home of the deceased, and the evidence leading up to the fight over the dog, were detailed substantially as given by the evidence of the state. Defendant testified that the deceased at the time he struck defendant with the poker in the house said, "You have had this coming for a long time", and then ran him out of the house. He admitted throwing some rocks through the front door glass of the house and later asking Floyd Gore to bring him his clothes so that he could leave. He stated that as he ran out of the house he picked up a pipe; that he later saw a figure approaching him in the darkness that he thought was Junior Gore; that when the man drew closer defendant said, "Junior", but the figure raised up and it was the deceased; that deceased had the poker in his hand and drew it back to hit the defendant, at which time defendant struck him the blows with the iron pipe. Defendant denied stating to the officers the next morning that he had killed Milford and was not sorry for it, and further denied he said, "He should have went back and got the rest of them". In rebuttal the state introduced the testimony of the deputy sheriff who swore that such statements were made. The mother of the defendant testified in his behalf that the testimony of Lena Boone, the sister of the defendant, concerning statements made by him at her home shortly after the homicide, was untrue.

We do not see any substantial merit to the contention of defendant that there was insufficient evidence to sustain the conviction. Defendant was not an invitee to the home of the deceased. He commenced the fight over the small dog and apparently at all times was the aggressor. After he had left the house he threw two or more rocks through the windowpane and the glass in the door. One of the rocks weighed about four pounds. Under defendant's own testimony, after he had thrown the rocks, he walked up by the door and saw the deceased standing by the door. The defendant still had the iron pipe in his hand. If the testimony of the sister was to be believed, the defendant said deceased did not see the defendant in the darkness until just before the fatal blow was struck and that deceased stepped back to try to avoid the fatal blows when he was struck by the pipe. The defendant testified that he did not remember how many blows he struck deceased and that he guessed he was mad because deceased had hit him with a poker and chased him out of the house.

Under the statute on homicide it is provided that upon a trial for murder where the commission of the homicide by the defendant has been proven, the burden of proving circumstances of mitigation, or that justify or excuse it, devolves upon him, unless the proof on the part of the prosecution tends to show that the crime committed only amounts to manslaughter, or that the defendant was justifiable or excusable. 22 O. S. 1941 § 745; Saulsbury v. State, 83 Okla. Cr. 7, 172 P. 2d 440.

In Chambless v. State, 90 Okla. Cr. 423, 214 P. 2d 947, this court held:

"Where the commission of the homicide by defendant is admitted, if there is any substantial evidence tending to prove the guilt of accused of murder or

manslaughter, a question is presented for determination of the jury, and a motion for an instructed verdict of not guilty under such circumstances is properly overruled."

There was sufficient evidence, if credited by the jury, to have justified a verdict for murder. The fact that defendant was found guilty of the lesser offense of manslaughter shows that the jury gave the defendant the full benefit of every doubt.

The other assignment of error presented by defendant refers to the testimony of Richard Sawyer, who was a brother of both defendant and deceased, concerning a difficulty which occurred at the home where deceased and Richard Sawyer lived, about two months before the fatal difficulty. In this testimony Richard Sawyer detailed a difficulty between Robert Sawyer, a nephew, and Charles Sawyer over a dog, and that they commenced to fight. Milford Sawyer attempted to separate them, and Charles jumped on Milford, but there wasn't much of a fight as Milford did not try to fight back. On cross-examination the attorney for the defendant showed that members of the family were constantly having arguments and scuffles but they always made up and got along all right after it was over. The attorney for the defendant asked the witness repeatedly if he knew of an instance where Milford Sawyer pulled scissors on the defendant, but the witness denied any knowledge of such occurrence. When the question concerning the prior difficulty between the deceased and defendant was first asked, counsel for defendant objected to such evidence on the ground that it was incompetent, irrelevant and immaterial. The objection was overruled. Thereafter a great many additional questions were asked and answered without objection, in which the evidence as heretofore related was brought out by the witness. When the defendant was on the stand he testified concerning another difficulty not related by the witness Richard Sawyer, wherein the deceased pulled a pair of scissors on him and the defendant took them away from him which occurred about a year before the homicide.

It is contended by counsel for defendant that the evidence concerning the fight 60 days previous to the fatal difficulty was too remote to have a bearing upon the relationship of the parties and should not have been admitted. In Tapedo v. State, 34 Okla. Cr. 165, 245 P. 897, this court held:

"In a homicide case, evidence of the relation of the parties, ill treatment, previous assaults and difficulties, where not too remote, are admissible as tending to establish motive, intent, and state of mind of the parties. Such evidence is not to be excluded although it may tend to prove some other offense. But in such case the court should by proper instruction restrict such evidence to the purpose for which it is admitted."

After a full consideration of the entire record it is our opinion that the evidence about which complaint is made was of little importance and apparently no significance was attached to it by the jury. Counsel for defendant asked the defendant about such alleged incident and also brought out, as heretofore related, testimony concerning another difficulty about a year before the homicide occurred. It is our conclusion that this evidence was admissible for the purpose of showing the relationship and feeling that existed between the defendant and deceased, but that the court by proper instruction, if requested, should instruct the jury in its consideration of such evidence the purpose for which it was admitted. Williams v. State, 89 Okla. Cr. 146, 205 P. 2d 1164; Clemmons v. State, 8 Okla. Cr. 159, 126 P. 704.

The punishment assessed the defendant was not excessive and the judgment and sentence of the district court of Comanche county is accordingly affirmed.

BRETT, P. J., and POWELL, J., concur.