**Richard WILLIAMSON, Plaintiff in Error,**
v.
**The STATE of Oklahoma, Defendant in Error.**
**No. A-13787.**

Court of Criminal Appeals of Oklahoma.
Jan. 26, 1966.

Alvin C. Bruce, Ardmore, for plaintiff in error.

Charles Nesbitt, Atty. Gen., Hugh H. Collum, Ass't. Atty. Gen., for defendant in error.

BRETT, Judge.

The defendant Richard Williamson was charged by information filed in the district court of Carter County with the crime of murder; was tried, found guilty of the included offense of manslaughter in the first degree, and his punishment fixed by the jury at twenty years in the State Penitentiary. Motion for new trial was duly filed and argued by the counsel for the defense, overruled, and the court pronounced judgment and sentence in keeping with the verdict of the jury.

The evidence developed by the State disclosed that Dr. L. E. C. Joers, county medical examiner (which is equivalent to county coroner) of Carter County, on November 22, 1964 examined the body of Daniel Williamson in the emergency room at the Ardmore Memorial Hospital; that

he found a stab wound above his collar bone and another at the region of the left nipple, and "that from the size of this stab wound, and the direction, and the amount of blood that was apparent, it had very evidently entered the heart and caused very sudden death."

Christine Robinson testified that on the date in question she was living at 115 D. Street, N.E., in Ardmore, with Daniel Williamson, and that she had been living there with him for about four years. They had never been married, and she drew welfare support. That the house and the furniture therein belonged to "me and Danny". That she and Danny were in bed on the night of this difficulty, and the defendant knocked on the door, saying he wanted in. That Daniel told him to leave, that they did not want to be bothered. She related that defendant forced the door and entered the living room, and started fixing his bed. Danny told him to leave, but he came through the kitchen into their bedroom. She stated that defendant and Danny were arguing, and got to scuffling, and they fell to the floor. She testified that she could see the defendant was striking Danny, and she ran out of the house to a neighbor's to call the police. She said she did not see a knife in the defendant's hand, but that she had used "a boning knife—something like the butchers use" in the kitchen the evening before, and the last time she saw the knife it was on the kitchen table. When she returned from the neighbor's house she found Daniel lying in the back yard. She stooped over him and asked if he were hurt, but he did not answer. She did not go into the house until the officers arrived. She went inside with them, and showed them where she left the two men, fighting, in the bedroom. She said there was blood on the floor. She testified also that the defendant, who was an uncle of Daniel, had been living with them for three weeks, but he had not paid any rent.

Three members of the Ardmore police department testified that they were called to the address where the difficulty occur-red at 2:20 a. m. and found the body of the deceased in the back yard, and the defendant was a short distance away. There was a trail of blood from the bedroom where the fight took place, through the kitchen to the place where Daniel's body lay. That the defendant had blood on his clothing, and that he had been drinking. They took him to jail.

Jno. Reininger, chemist with the State Bureau of Investigation, testified that he examined blood samples submitted to him by the Carter County officers, which were found on the overcoat sleeve and the trouser leg of defendant's clothing. He testified that the blood samples were human blood.

The defendant himself was the only witness offered on behalf of the defense. He testified that he had lived in Carter County all of his life, and that he was sixty two years of age. He admitted that he had been in the State Penitentiary "two or three times", and in the Ardmore city jail numerous times. He had been living at the home of his nephew about three weeks. He said he paid $4 a week for his room, and had made two payments. When he entered the house on the night in question, the deceased demanded rent payment. Defendant said he had a $5 bill, but he would not give that to deceased, so a fight ensued. He stated that the deceased had a butcher knife in his hand, and that defendant was not in the bedroom, but instead that they fought in the living room, and when he went into the back yard, the deceased followed him. He testified that he had not been drinking and that he did not stab the deceased, and that he did not know how the deceased got stabbed unless he did it himself.

■ The evidence was conflicting on the issue as to whether or not the defendant struck the blows which resulted in the death of Daniel Williamson. Such conflict in the testimony raised an issue for the determination of the jury. This Court is bound by the jury's findings. Stubbs v. State, 88 Okl.Cr. 102, 200 P.2d 456; Brown v. State, 81 Okl.Cr. 314, 164 P.2d 401;

Salisbury v. State, 80 Okl.Cr. 13, 156 P.2d 149.

■ There is ample evidence to sustain the verdict of the jury, and the judgment and sentence of the court. The instructions given by the court were very fair and fully covered the issues. No objections were made, and no exceptions were saved to the giving of any of the instructions.

■ Counsel for the defendant did not file a brief in this case, but appeared for oral argument when the case was assigned, and argued the case before the Court. Counsel especially urged that the judgment and sentence was excessive and unreasonable, and apparently given under the influence of passion and prejudice. With this we cannot agree. In the case of Stigall v. State, 53 Okl.Cr. 329, 11 P.2d 770, this Court held that a sentence of 99 years on a conviction of manslaughter in the first degree was not excessive; and in Sawyer v. State, 94 Okl.Cr. 412, 237 P.2d 167, and also in Bruton v. State, Okl.Cr., 305 P.2d 1045, we held that a sentence of 50 years was not excessive. In fact, we are of the opinion that the attorney for this defendant is to be commended for the able manner in which he handled the defense. This defendant was charged with murder, and under the testimony might well have been convicted thereof, and the fact that he was found guilty of manslaughter in the first degree and sentenced to only 20 years is, no doubt, due entirely to the efforts of his court-appointed counsel.

The judgment and sentence of the district court of Carter County is affirmed.

BUSSEY, P. J., and NIX, J., concur.