THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.*
CECILIO CORTÉS DEL CASTILLO, Defendant and Appellant.

No. 16681. Decided October 17, 1962.

*Francisco Ponsa Feliú, Manuel A. García Méndez,* and *Alvaro R. Calderón, Jr.,* for appellant. *J. B. Fernández Badillo, Solicitor General,* and *Genoveva R. Carrera, Assistant Solicitor General,* for The People.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Rigau, and Mr. Justice Dávila.

MR. JUSTICE DÁVILA delivered the opinion of the Court.

1. In a former prosecution appellant was charged with murder in the first degree and found guilty of second degree. He appealed and we reversed. *People* v. *Cortés,* 79 P.R.R. 769 (1957). The district attorney again charged him with murder in the first degree, but the day set for the trial, in open court and in the presence of the jury, he informed the court that he wanted to reduce the degree of the offense to a lesser degree, and he therefore moved to eliminate the concept of "deliberation" and any reference to "first degree" The court complied and ordered that the information be transcribed eliminating those concepts. Such action is assigned as error.

Appellant maintains that the proper procedure was to commence the prosecution anew, to set a day for arraignment so as to enable defendant to make a new plea. We do not agree. In *People* v. *Pérez,* 84 P.R.R. 173 (1961), we considered a situation similar to that raised herein. In *Pérez* the original information was murder in the first degree

and he was found guilty of second degree. He appealed and we reversed, and when a new trial was held he was charged with first degree, but the jury again returned a verdict of second degree. The error assigned was that the information at the second trial should have been for murder in the second degree. And that would have been correct following *Velázquez* v. *Delgado*, habeas corpus, 773, decided June 25, 1958, and *Green* v. *United States*, 355 U.S. 184 (1957). However, in deciding the question we said:

"The appellant complains, however, that the error committed by the superior court in prosecuting him for the second time for a crime of murder in the first degree was prejudicial to him. We disagree. On previous occasions we have said that murder is a single crime which is divided into degrees depending on the wickedness on the part of defendant and for the sole purpose of the imposition of the penalty. *People* v. *Ortiz*, 62 P.R.R. 246, and *People* v. *Colón*, 65 P.R.R. 714. The difference between the two degrees of murder consists in that in the first-degree murder the death is committed with malice aforethought and deliberation, while in the second-degree murder the death is malicious and premeditated, without there being deliberation. *People* v. *Blanco*, 77 P.R.R. 726. Deliberation being a subjective act of the accused, it can not be proved by direct evidence, and it is therefore necessary to resort to the facts of the case in order to determine whether deliberation may be rationally inferred therefrom. *People* v. *Rosario*, 67 P.R.R. 346. It is logical to conclude that the evidence in support of a conviction for the crime of murder in either degree is generally the same. In the instant case, at least, it was the same. Consequently, the appellant was not bound to confront evidence foreign to the crime of which he was convicted and which, for that reason, might prejudice his rights."

We fail to see how defendant could have been prejudiced by the request made in the presence of the jury to eliminate the concept of "deliberation" and the classification of "first degree," for it has been held that defendant is not prejudiced by the fact that the jury has under consideration

an information of murder in the first degree, characterized by deliberation, when it should have been one for second degree. See, also, *People* v. *Delgado*, 44 P.R.R. 148 (1932).

2. The second error assigned is the refusal to permit the defense to impeach a prosecution witness. At the end of his testimony the witness testified that he had seen defendant walking fast from the place where a shot was heard and the victim fell to the ground. Upon questioning by the defense "as to whether he had seen any firearm there, a revolver?", he answered "no, sir." Thereupon the defense terminated the cross-examination. The witness then stammered, "he . . . he . . .," and the district attorney intervened and asked, "What?", and the judge asked "What were you going to say?", to which the witness answered, "He was carrying something black in his hand when he ran from the rear." The defense asked some questions and the witness answered that defendant was carrying "something small, something like a handle." Upon questioning by the district attorney, he said that it was black and that defendant "was walking fast with his right hand here in the pocket."

█ The defense then asked the witness if he had testified on some former occasion what we have just related. The purpose was to impeach the testimony given. The question then arose as to whether it is proper to impeach a witness for failure to state relevant facts when he had an opportunity to do so. The position taken by the defense before the trial judge was in the sense that "in order to impeach for failure to testify on a former occasion something stated but which was omitted before, it is necessary that the court be convinced that on the previous occasion it was such and the circumstances were such that it was to be expected, and that it was reasonable and logical for the witness to have stated that on the former occasion, but it is not necessary that a specific question should be put to him."

In deciding the question the court determined that in order to impeach a witness for failure to testify on a certain matter, it was necessary to formulate specific questions on that matter and that "he remain silent and say nothing." It states as follows: "The court is of the opinion that it does not appear either from the affidavit or from the testimony given at the trial[1] in Aguadilla that he was questioned on that matter."

It is admitted that the credibility of a witness may be impeached because he omitted on a former occasion to state a relevant fact bearing on the matter being investigated. 1 UNDERHILL, Criminal Evidence, § 240 (5th ed. 1956); 3 WIGMORE, Evidence, § 1042 (3d ed. 1940). This is so despite the fact that in the legal provisions authorizing the impeachment of witnesses—§ 159 of the Law of Evidence, 32 L.P.R.A. § 2151, and § 245 of the Code of Criminal Procedure, 34 L.P.R.A. § 724—it is provided that in order that the truth of a witness may be impeached, he must have made statements incompatible or inconsistent with his testimony at the trial. *Skipper* v. *Commonwealth*, 80 S.E.2d 401 (Va. 1954); *Sims* v. *Struthers*, 100 So.2d 23 (Ala. 1958). However, it is necessary that it be a material fact. *Young* v. *Colorado National Bank of Denver*, 365 P.2d 701 (Colo. 1961), and that, as maintained by WIGMORE, that it would have been natural for the witness to make the statement when he testified the first time. 3 WIGMORE, *op. cit.*, § 1042(3) (3d ed. 1940). If it was natural to state the fact omitted and he did not do so, even though he was not specifically asked, it may be used to impeach his testimony in court.

 We must therefore determine whether it was natural and reasonable for the witness to make, in the course of the investigation of the facts carried out by the district

---

[1] When this witness testified at the first trial he did not make any reference to the fact on which he testified at the second trial and which is the object of the discussion.

attorney the day following the occurrence, the statement which he made at the trial to the effect that when defendant walked away from the place where the victim fell he was carrying something black in his hand. It is well to recall, in making this determination, that when the witness mentioned the fact that defendant was carrying something in his hands as he walked away from the scene of the occurrence, he did so upon reaction to a direct question put by the defense in that sense at the end of the cross-examination[2] and not as pointed out by the defense "in an unexplainable and unexpected manner." If it had arisen spontaneously in the course of the trial, it could be maintained that it would have been natural to mention that detail when he testified the first time before the district attorney, since if he considered it important to mention it spontaneously during the trial, it is reasonable that he should have mentioned it also when he testified the first time. That is why it is important to point out that immediately before the witness mentions the detail that defendant was carrying something in his hand, the defense had asked him if he had seen a firearm, a revolver. In his first testimony the witness related everything which at first blush seems relevant: the shot, the

---

[2] "Q. Tell me, witness, did you see how that shot occurred which you claimed having heard, you saw how it happened?
A. Well, I heard the shot, I saw the girl fall forward.
Q. But you don't know how it happened?
A. I don't know because he was running by the rear.
Q. Did you see any firearm there? A revolver?
A. No, sir.
DEFENSE:
That's all, Your Honor.
WITNESS:
He ... He ...
DISTRICT ATTORNEY (Freyre):
What?
HON. JUDGE:
What were you going to say?
A. He was carrying something black in his hand as he was running from the rear." (Tr. Ev. 365–66.)

victim's fall, defendant walking away from the place. The fact that defendant was carrying something in his hand could have escaped him, unless he had been specifically asked on that point. His first testimony was an expositive recital of the facts, without propounding questions to him of any kind. In that testimony he stated everything that a person might consider reasonable in relating the facts which he had witnessed the previous day. It was not important to mention the fact of what defendant was carrying in his hand. He had related in his testimony what was actually important. If he mentioned that fact at the trial, he did so upon reaction to a question put by the defense. It cannot therefore be concluded that it was natural and reasonable for the witness to mention in his first testimony the fact that defendant was carrying something in his hand as he walked away from the scene of the occurrence. The second error was not committed.

3. We turn to consider the third error assigned. Shortly before the shot which took her life the victim uttered in the ear of a witness, "The old man does not want me to fall in love. Perhaps he wants his daughters so he can abuse them."

When the question of admissibility of that statement arose, the defense objected alleging that it was hearsay evidence. He stated that statements of that nature are admissible as an exception to the hearsay rule when they occur subsequent to an excited act—in this case the victim's aggression—because the excitement "stills to such an extent man's reflective faculty and power of deliberation that the utterances which then occur and under those circumstances may be taken as trustworthy." And the defense concludes that since in the case at bar the statement was made prior to the homicidal attack, the general rule applies, not the exception.

In *People* v. *Calventy*, 34 P.R.R. 375 (1925), we considered the question of admissibility of spontaneous statements. We cited from WIGMORE in part the following:

"This general principle is based on the experience that, under certain external circumstances of physical shock, a stress of nervous excitement may be produced which stills the reflective faculties and removes their control, so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock. Since this utterance is made under the immediate and uncontrolled domination of the senses and during the brief period when considerations of self-interest could not have been brought fully to bear by reasoned reflection, the utterance may be taken as particularly trustworthy (or, at least, as lacking the usual grounds of untrustworthiness), and thus as expressing the real tenor of the speaker's belief as to the facts just observed by him; and may therefore be received as testimony to those facts."

Thus, it may be seen that under certain circumstances statements which would be admissible as a general rule would not be so as constituting hearsay evidence. See, also, *People* v. *González*, 66 P.R.R. 193 (1946), and *People* v. *Muñoz*, 68 P.R.R. 159 (1948).

 In a recent decision the Supreme Court of Illinois in *People* v. *Poland*, 174 N.E.2d 804 (Ill. 1961), stated as follows on the exception to the hearsay rule:

"There has emerged, as a recognized exception to the hearsay rule, the principle that, under certain conditions, what have been variously characterized as 'spontaneous declarations' or 'excited utterances' are properly admissible as an exception to the hearsay rule. Perhaps the classic statement of the reason underlying this exception is that of Wigmore."

And it then goes on to cite the principle which we copied with approval in *People* v. *Calventy*, *supra*.

The court further states in the *Poland* case:

"The rule has been succinctly stated by the Supreme Court of California: 'When a declaration is made under the imme-

diate influence of the occurrence to which it relates and so near in time . . . as to negative any probability of fabrication, said declaration is admissible.' *Showalter* v. *Western Pacific Railroad Co.*, 16 Cal.2d 460, 106 P.2d 895, 899.

"Three factors are necessary to bring a statement within this exception to the hearsay rule: (1) an occurrence sufficiently startling to produce a spontaneous and unreflecting statement; (2) absence of time to fabricate; and (3) the statement must relate to the circumstances of the occurrence."

See, however, for these three requirements the case of *Murphy Auto Parts Company* v. *Ball*, 249 F.2d 508 (D.C. Cir. 1957); Note, 47 Cal. L. Rev. 939 (1959). See, also, *Commonwealth* v. *Friedman*, 165 A.2d 678 (Penn. 1960).

█ █ Thus, we see that it is not required that the excited occurrence which may produce an admissible utterance by way of exception to the hearsay rule be the act for which the defendant is on trial. See, also, 6 WIGMORE, Evidence, § 1753 (3d ed. 1940), where it is stated: "What is required here is merely that there shall be some startling occurrence calculated to produce nervous excitement and spontaneous utterance (*ante*, § 1749). It is immaterial whether or not that startling occurrence is itself relevant under the issue; though in the ordinary case it does happen to be relevant." And McCORMICK, Evidence 579, § 272 (1954), where it is said, "Under prevailing practice the declaration itself seems to be taken as evidence of the fact of the happening of the startling event." And further on he points out that "the test to be applied by the judge is: was the declaration spontaneous, excited, or impulsive, or was it the product of reflection and deliberation?" Of course, it would be impossible to lay down a fixed rule which will fit all cases. In considering the admission of statements as that involved herein, the best test seems to be that each case must depend on its own facts and the duty is imposed upon every judge to exercise sound and judicial discretion in determining whether or not the facts and circumstances warrant the

admission of the evidence. *Washington* v. *State*, 118 So.2d 650 (Fla. 1960) ; *Frazee* v. *State*, 153 P.2d 637 (Okla. 1944).

The evidence in the case at bar reveals that shortly before the victim made the statements in controversy, "she came running, she came out of the house in our direction; she was running; she was coming; holding her skirt with the left hand," and when the witness was asked if he had noticed anything wrong with her when she was coming, he answered, "I noticed that when she arrived where we were she was nervous, completely nervous," and further on when he was asked, "And you say that when she was coming in your direction along that road she was holding her skirt with the left hand," he answered, "The skirt, yes, sir." It was then that the witness said, "Then she told us," the defense objected, and there arose the incident object of this assignment.

■ In our judgment, this evidence shows that something had happened to the victim, that she was running, and was nervous, and as a result she opened her heart to the first persons encountered and made the statements copied above. We fail to see how a girl 16 years of age could have made those statements premeditatedly. Those controversial statements went into the innermost recess of the paterno-filial relationship and were made at a moment of evident excitement. The girl was nervous and was running and holding her skirt. All those circumstances meet the test needed to make them admissible. Obviously, the requirements which according to the authorities are necessary to make them admissible are present.

In the case of *Dodd* v. *State*, 233 Pac. 503 (Okla. 1925), a witness was permitted to testify on certain statements which the victim made to him. Those statements were made before the shot which took his life but subsequent to a controversy between the defendant and the victim. The court explains the situation as follows:

"This was subsequent to the controversy at the filling station which was the beginning of the difficulty which culminated in the shooting of the deceased, and under all the circumstances it was, we believe, a part of the res gestae and properly admitted as such.

"The difficulty in which the deceased was killed was in fact a continuous transaction from the beginning of the quarrel at the filling station through the difficulty in the office of the hotel until the killing on the stairway or second floor of the hotel, and under the evidence the statement of the witness Brandon, above set out, was about eight or ten minutes before the shots which killed the deceased were fired."

See, also, *Brents* v. *State*, 247 S.W. 1061 (Ark. 1923); *State* v. *Hessenius*, 146 N.W. 58 (Iowa 1914); *People* v. *Gibson*, 52 N.E.2d 1008 (Ill. 1944); *Kraut* v. *State*, 280 N.W. 327 (Wis. 1938); 1 WHARTON, Criminal Evidence, § 281 (12th ed. 1955); McCORMICK, Evidence 578, § 272 (1954).

4. Let us consider the fourth error. It bears on an incident which arose as a result of a letter admitted in evidence without objection by the district attorneys. Defendant alleged that the victim had committed suicide and that the letter in question contained a suicidal note. The purpose was to establish that the victim had entertained the idea of taking her life. In the argument before the jury the defense made reference to the fact that the district attorneys had admitted the authenticity of the letter. The district attorneys objected to such assertion. They contend that the fact that they did not object to the admission of the letter does not mean that they admitted its authenticity. They merely admitted the sufficiency of the evidence of genuineness necessary for admissibility. Defendant on his part maintains that if this were so, he would be prejudiced because he was precluded from offering other evidence, including expert evidence, to establish its authenticity.

In this ruling the trial judge stated that the question of authenticity of the letter and of its probative value was for the jury.

■ The fact that the district attorneys did not object to the admission of the document does not have the importance attributed by defendant. When the district attorneys stated that they had no objection, the letter had already been sufficiently identified to be admitted even over the district attorneys' objection. The requirements of the Law of Evidence had been met—32 L.P.R.A. §§ 1831, 1834.[3] A brother of the victim had authenticated her writing as her own. That was sufficient to render it admissible. *People* v. *Martí,* 20 P.R.R. 112 (1914). Thus, the argument that defendant was precluded from producing an expert to establish the genuineness of the letter is without basis. The position of the district attorneys was obviously to the effect that the provisions of the Law of Evidence for authenticating and rendering admissible a document having been fulfilled, it was useless to object to its admission.

■ The determination on the genuineness and value attributed to the document offered rested in the last instance with the jury. 7 WIGMORE, *op. cit.*, § 2135. To that effect, says WIGMORE:

"It follows that, after a ruling in favor of the sufficiency of the evidence by the party offering the document, it goes to the jury, before the opponent can offer evidence in denial; and the opponent's evidence in denial, when it comes, is to be ad-

---

[3] Those sections provide as follows:

Section 1831
 "Any writing may be proved either:
 "1. By anyone who saw the writing executed; or,
 "2. By evidence of the genuineness of the handwriting of the maker; or,
 "3. By a subscribing witness."

Section 1834
 "The handwriting of a person may be proved by anyone who believes it to be his, and who has seen him write, or has seen writing purporting to be his, and upon which the supposed writer has acted or been charged, or which consists of letters received by the witness in due course of mail in response to letters duly addressed and mailed by him to the supposed writer, and who has thus acquired a knowledge of the handwriting of such person."

dressed to the jury, not to the judge, for the judge has ruled as matter of law upon the sufficiency of the evidence, and the question rests now with the jury. *Conversely, if the opponent offers no evidence in denial, nevertheless there is no rule of law requiring the jury to presume execution; they are to weigh the evidence without any compulsory rule of law."* (Italics ours.)

 5. In his instructions to the jury the trial judge stated: "The law does not require a specific number of witnesses to establish a fact or circumstance. Only one witness entitled to full credit may be sufficient to prove a fact or circumstance, save perjury or treason." Defendant took exception to this instruction "in the belief that that instruction can not be given in this case where there is no direct witness." In support of his position he invokes the provisions of § 18 of the Law of Evidence—32 L.P.R.A. § 1661—to the effect that "the direct evidence of one witness who is entitled to full credit is sufficient for proof of any fact, except perjury and treason." Defendant's theory is "that any fact may be considered proved by the testimony of a single witness, provided such testimony is direct evidence of the occurrence of the fact in question." And that is precisely what happened in the case at bar. Each one of the prosecution witnesses testified on a fact of his own knowledge, on occurrences which he had witnessed. His testimony was direct evidence of the fact related. For example: in considering the second error we made reference to the testimony of one of the prosecution witnesses who saw defendant walking fast as he came out of the small house, the scene of the occurrence. This testimony is direct evidence of that particular incident. Other witnesses testified on other incidents which they witnessed. The instruction challenged explains the law correctly in stating that the testimony of a witness entitled to full credit is sufficient evidence of any fact. The district attorney offered direct evidence on the facts and circumstances which tended to connect defendant with the commission of the offense charged. The testimony of a sin-

gle witness is sufficient to establish each of those facts and circumstances.

In defining indirect evidence, the Law of Evidence says, 32 L.P.R.A. § 1630:

"Indirect evidence is that which tends to establish the fact in dispute by proving another, and which, though true, does not of itself conclusively establish that fact, but which affords an inference or presumption of its existence."

Thus, we see clearly that it is necessary to establish a fact from which others may be inferred. The Law of Evidence provides — 32 L.P.R.A. § 1882 — that "an inference is a deduction which the reason of the judge or jury makes from the facts proved. . . ." The circumstantial evidence is nothing more than one or more inferences which may be said to arise from a series of proven facts. *Hatfield* v. *Levy Bros.*, 117 P.2d 841 (Cal. 1941). The facts from which others may be drawn are established by direct evidence, and the testimony of a single witness entitled to full credit is sufficient proof. *People* v. *Yokum*, 302 P.2d 406 (Cal. 1956).

6. When the information for carrying weapons was submitted, the trial judge found defendant guilty. The defendant attacks the judgment of conviction. He contends that The People was bound to establish that defendant was not authorized to carry weapons. The contention is clearly frivolous. On numerous occasions we have held that "in cases of unlawful carrying or possession of firearms, the prosecuting attorney is not bound to prove that defendant had no license, when the fact has been alleged in the information and the carrying and possession of the weapon has been proved, since in those cases the presumption of illegal carrying or possession arises, and it is incumbent upon defendant to adduce evidence to overcome that presumption." *People* v. *Pacheco*, 78 P.R.R. 23, 28 (1955); *People* v. *Oquendo*, 79 P.R.R. 511 (1956); *People* v. *Segarra*, 77

P.R.R. 696 (1954) ; *People* v. *Negrón,* 76 P.R.R. 323 (1954) ; *People* v. *Rupizá,* 72 P.R.R. 694, 697 (1951). And in this case it was alleged in the information that appellant had no license to carry weapons.

The judgments appealed from will be affirmed.