# WALTER W. DODD v. STATE.

No. A-4691. Opinion Filed Jan. 24, 1925.
Rehearing Denied March 7, 1925.
(233 Pac. 503.)

(Syllabus.)

1. **Evidence—"Res Gestae" Defined.** It is not possible to define the term "res gestae" by any exact definition which will fit all cases. The term in a general way may be defined as the circumstances, facts, and declarations which grow out of the main fact and shed light upon it and tend to explain it, are voluntary and spontaneous, and made at a time so near, either prior or subsequent to the main act, as to exclude the idea of deliberation or fabrication.

2. **Same—Statement of Deceased During Intermission of Difficulty Admissible as Tending to Show Who Was Aggressor in Renewal of Difficulty.** Where a difficulty took place between two persons which, after a brief intermission, was renewed and resulted in the killing of one by the other, a statement during such intermission by the person thereafter killed in reference to the difficulty, which tends to show the state of mind of the parties when the difficulty was renewed a few minutes later, and which tends to prove who was the aggressor, is admissible.

3. **Trial—Instruction on Self-Defense not Reversible Error as Assuming Accused Was Aggressor.** An instruction in these words: "You are further instructed that the right to defend one's self against danger or attack, not of his own seeking, is an inherent right which the law not only concedes, but guarantees to all men, but the law does not permit a man to voluntarily seek or invite a combat. The right of self-defense does not imply the right of attack, and will not avail in any case where the difficulty is sought for or induced by the defendant by any willful act of his own, and which the accused voluntarily and of his own free will entered into, no matter how imminent his peril may become during the progress of the difficulty, unless you should believe that after entering into the difficulty the defendant abandoned the difficulty and attempted to withdraw therefrom, in which event the defendant would be entitled to the right of self-defense after abandoning or attempting to withdraw from the difficulty, although he may have provoked the original difficulty"—does not constitute reversible error as assuming the defendant the aggressor.

Appeal from District Court, McIntosh County; Harve L. Melton, Judge.

Walter W. Dodd was convicted of manslaughter, and he appeals. Affirmed.

H. West, King & Crawford, and C. H. Tully, for plaintiff in error.

George F. Short, Atty. Gen., and Kathryn Van Leuven, Asst. Atty. Gen., for the State.

EDWARDS, J. The plaintiff in error, Walter W. Dodd, was tried and convicted for the slaying of John Sellers in McIntosh county, Okla., and was convicted of manslaughter and sentenced to a term of five years in the penitentiary. The facts surrounding the killing, as gathered from the record, are about as follows:

"The deceased, John Sellers, with his father, Alex Sellers, were engaged in running a hotel at Eufaula, and the defendant, Walter W. Dodd, and his brother, Charley Dodd, were guests at the hotel. Some unpleasantness between the deceased, John Sellers, and the plaintiff in error had arisen. A short time prior to the killing, the two brothers drove up at a filling station about a block distant from the hotel, where John Sellers was having some trouble with and was working upon his car. A quarrel took place there concerning which the evidence is conflicting. The defendant and his brother contend that the conversation was an attempt to get the amount of their garage bill from John Sellers for the purpose of checking out at the hotel, and one witness testified that he heard John Sellers say, in response to a call from the plaintiff in error: 'I ain't got time to mess with you; I am busy working on my car.' That they had a few words, and the defendant said: 'Go get your gun; let's shoot it out.' And that he started to walk away and stopped and said: 'I will see you all some time later.' Upon cross-examination, however, the evidence of this witness was somewhat contradictory and shaken.

"Shortly thereafter the plaintiff in error and his brother, and Alex Sellers, father of the deceased, were in the lobby of the hotel, and the deceased came into the

lobby and immediately struck at the defendant, Walter Dodd, but was caught and held by Charley, a brother of the plaintiff in error. The deceased then attempted to kick Walter Dodd and did touch him with his foot; that the two brothers were in the lobby to settle their hotel bill. The plaintiff in error, Walter Dodd, then either left the hotel or was taken away and went to his car across the street, and there determined to again go into the hotel, as he says, for the purpose of getting his belongings. Another witness testifies, however, that when he left the car to return to the hotel he said: 'I am going in the back way and get Charley's gun and kill the damn son of a bitch.' This witness further testifies that he told Charley Dodd and John Sellers that the plaintiff in error had gone after the gun, which was in an upstairs room; that the elder Sellers then started up the stairs and was part way up when John Sellers, the deceased, started to follow him; and that Charley Dodd followed John Sellers.

"Alex Sellers, the father of the deceased, testified that hearing a noise upstairs he started up. Part of his testimony is as follows: 'Q. Then what did you do? A. I headed towards the noise, and the defendant was coming down the steps with a gun in his hand, and my boy happened to come up after me, passed me, and met the defendant one or two steps up on the third floor, and he ordered him back, which he did do. Q. What did Walter say? A. "John Sellers, go back, God damn you, or I will kill you." * * * Q. Did you say anything to Walter? A. I told him, asked him, "Walter, what are you trying to do?" and he says, "I am going to kill that God damn son of a bitch if he hurts my brother Charley." I says: "Walter, put that gun up. He will not hurt your brother Charley. I will see that he will not do it. Put that gun up." And he kept coming and saying something about killing the whole family, and about that time my boy darted by me, pushed me against the door of room 64.'

"The deceased made a dying declaration, part of which is as follows:

" '* * * I started upstairs, and he was coming back down, and on the landing of the third floor I met him.

He had his pistol in his hand, and said, "Go back there or I will kill you if you don't." I turned and walked to the landing of the second floor. Papa was coming down, and he passed me, and went up and grabbed at him. I went back to help Papa, and he, Dodd, shot me. I don't know how many times. I was not armed at all, not even a pocketknife. * * *'

"Margaret Hobbs, an employee of the hotel, testified that she met the plaintiff in error at the top of the steps on the third floor, with a gun in his hand. 'Q. What did he say? A. That is when he made the remark, "I am going to kill the son of a bitch." Q. When he made that remark, what was the next thing you heard? A. I heard shots. Q. No, no, I mean while you were there at the head of the steps after he said he was going to kill the son of a bitch, did you hear him say anything besides that to anybody? A. I heard John say, "Is that you, Walter?" No, I heard Walter say, "Is that you John?" and John said, "Yes, for God's sake don't shoot me." '

"The plaintiff in error testified that after the first difficulty he went to his room, then thought he would go to Charley's room and get his gun and stick it in his pocket; that he went down the steps and met Mr. Sellers, but didn't see John Sellers until he reached up at him; then that he told him not to come at him or he would kill him; that both of them came on then; and that he pulled the trigger involuntarily. He did not know how many shots he fired.

"Charley Dodd, the brother of the plaintiff in error, testified about the difficulty occurring just prior to the homicide, and that he was told that Walter had gone upstairs to get the gun, but that he did not go upstairs until he heard a noise; was nearly to the top when he heard the first shot, and had gotten nearly to the top when he heard the rest of the shots, and that John Sellers had been shot five times; that the gun was in Walter's hands and he was down against the floor."

This covers the substance of the evidence touching most nearly on the evidence of the homicide.

The plaintiff in error argues several assignments of error which will be noticed. First, it is contended that the court committed error in permitting the witness Walter Brandon to testify to a conversation he had with John Sellers, the deceased, as follows:

"Q. What was the conversation that you had with John Sellers there at your place that you have described, when he went over there to the hotel; what did he say to you? A. * * * I told him I would take my car and start it for him, and he said, 'All right.' He said, 'I wish you would, as I don't want to go back over to the filling station.' He says, 'I had a little trouble with those Dodd boys over there, and I don't want to go back over there.'"

This was subsequent to the controversy at the filling station which was the beginning of the difficulty which culminated in the shooting of the deceased, and under all the circumstances it was, we believe, a part of the res gestae and properly admitted as such.

The difficulty in which the deceased was killed was in fact a continuous transaction from the beginning of the quarrel at the filling station through the difficulty in the office of the hotel until the killing on the stairway or second floor of the hotel, and under the evidence the statement of the witness Brandon, above set out, was about eight or ten minutes before the shots which killed the deceased were fired.

What constitutes res gestea is often a complex and difficult question. The term is not capable of a definition which will fit all cases, and of necessity must be left in some measure to the sound discretion of the trial court. In general terms, it means the circumstances, facts, and declarations which shed light upon and explain the principal fact, and which are voluntary and spontaneous in their nature, and so nearly contemporaneous as to preclude the idea of deliberation or fabrication. Price v. State, 1 Okla.

Cr. 358, 98 P. 447; 34 Cyc. 1642; 22 Corpus Juris, p. 454, § 543.

It is contended that the trial court erred in denying counsel for plaintiff in error full rights of cross-examination of the witness Alex Sellers, the father of the deceased, and in making a remark to counsel in reference to such examination: "Be fair with the witness." An examination of the record discloses that in the course of the cross-examination the court evidently thought counsel did not give the witness time to answer a question propounded, and upon counsel saying to witness, "Answer that question," the court said: "He is answering your question. Be fair with the witness. Let him answer the question you asked." This statement of the court was not excepted to at the time, and the examination proceeded. The remark cannot reasonably be construed as having reflected on counsel for plaintiff in error, or as imputing to him any unfairness, but as exercising control over the proceedings. The court made no order limiting the scope of the cross-examination, merely sustained objection to certain questions as argumentative, in which we think there was no prejudicial error.

The plaintiff in error further complains of the giving of instruction No. 18 by the court, as assuming that the plaintiff in error sought or voluntarily entered into the difficulty in which the deceased was killed. This identical instruction was given in the case of Austin v. State, 28 Okla. Cr. 73, 228 P. 1113. The instruction is somewhat involved and not well worded, but is free from any prejudicial error.

Complaint is also made that in the giving of instructions 19, 20, and 21 the court emphasized the rule of law that, if the defendant was the aggressor or entered voluntarily into the difficulty and had not abandoned the same, he thereby lost the right of self-defense, and coun-

sel cite the case of Price v. State, 1 Okla. Cr. 359, 98 P. 447, to the effect that by constant repetition even a correct instruction may be given undue prominence. In No. 19 the jury is told in effect that threats of violence by the deceased would not justify the killing, but that threats might be considered along with other circumstances for the purpose of ascertaining who was probably the aggressor in the conflict, and if communicated to the plaintiff in error might be considered in determining whether the plaintiff in error in good faith believed that his life was in danger at the time he killed the deceased. The jury was then told that threats will not justify the killing if they believed beyond a reasonable doubt that the defendant was the aggressor in the difficulty. The instruction seems to state the law correctly, and no complaint is made on that score; but it is contended that it is not applicable under the evidence. In No. 20 the jury are instructed what weight to give to the previous difficulty between the parties, and they are told that previous difficulties would not justify the homicide if they find beyond a reasonable doubt that the defendant was the aggressor. The instruction correctly states the law on that proposition. In instruction No. 21 the court tells the jury that evidence has been offered as to the reputation of the deceased as a quarrelsome, dangerous man, and for what purpose that is to be considered, and if such fact was known to the defendant, what effect it should have in determining the good faith of the defendant at the time of the killing and as throwing light on who was probably the aggressor in the difficulty. The question as to who was the aggressor in the difficulty was one of the vital points, and in stating the different propositions of law covered by instructions 19, 20, and 21 it was proper for the court to limit their application to those cases in which a defendant was not the aggressor. It is obvious that where a jury finds beyond a reasonable doubt that the defendant is the aggressor, the application of the principles of law is modified by that fact.

Upon an examination of the whole record, we believe that the plaintiff in error had a fair trial; that the law was fairly submitted by the instructions of the court; that the verdict of the jury is abundantly sustained by the evidence; that the punishment given is not excessive.

The judgment is affirmed.

BESSEY, P. J., and DOYLE, J., concur.