# WILLIE SMITH v. STATE.

No. A-9353. May 13, 1938.
(79 P. 2d 616.)

B. C. Franklin, of Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for the State.

DOYLE, J. The defendant, Willie Smith, was convicted of uxorcide. In accordance with the verdict of the jury on December 19, 1936, the court sentenced him to imprisonment

for life. To reverse this judgment he appealed by filing in this court on June 19, 1937, a petition in error with case-made.

The information charged Willie Smith with the murder of Essie Lee Smith by shooting her with a pistol in Tulsa county on the 29th day of April, 1936.

The assignments of error are based on exceptions taken to rulings of the court on the admission and exclusion of evidence, and question the sufficiency of the evidence to support the verdict and judgment of conviction.

The evidence for the state shows that on April 29, 1936, between the hours of 11 and 12 p.m., Essie Lee Smith was shot near the home of her parents, Mr. and Mrs. B. C. Tipton, at the corner of Peoria and Pine streets, in the city of Tulsa.

From the effects of the gunshot wounds she died May 7, 1936; her death was due to a hemorrhage from the large subclavian vein, just beneath the collarbone; the vein was severed.

It appears the defendant and the deceased were married July 5, 1934, and that they separated three or four months before her death; that on the night of the tragedy she left the bus going south on Peoria, in front of her father's store, walked west on Pine to the walk leading into her father's house, and there received the fatal shots.

B. C. Tipton, her father, testified that he was in his place of business and heard three shots fired, and heard his daughter scream; that he ran out the back door and saw his daughter lying on the sidewalk, ran to her and she said, "Oh, Daddy, Bill shot me—he done killed me"; that it was about 20 feet from the back door of his store to where his daughter was lying. He further testified that his daughter and her husband had separated and she had been making her home with him.

W. P. Carter testified that he was returning from the Century Club on the night of April 29th, at about 12 o'clock, and passing the Peoria and Pine intersection, he heard a gun fire, and saw a man standing over a woman shooting; that Talmadge Hughes was driving the car and went on about a block before he stopped the car; they left the car and walked back; when they got there the man who fired the shots was gone.

Talmadge Hughes testified that they left the Century Club between 11 and 12 o'clock; he was driving the car; that when he heard the first shot he looked and saw a woman fall on the sidewalk, and saw a man leaving, running southwest across Pine street.

Flora Temer testified that she lived at 1242 East Pine, and heard the screams and heard three shots; it was 11:30 or 12 o'clock; that she rushed out on the street and a man in his shirt sleeves ran by her going west, and passed within five feet of her; that she recognized him, he was Bill Smith; that she rushed to the girl who was lying near the corner of her father's store building; that Mr. Tipton, the girl's father, was there; that she was not personally acquainted with Bill Smith, but knew him as the dead girl's husband; that she said "Essie Lee, is that you?" Essie Lee said, "Yes—come get me—I am shot". Witness said, "Who shot you?" and Essie Lee said, "Bill." Witness said "Bill who?" she said, "Bill Williams—my husband shot me." Recalled, she testified that she made a mistake in the name "Bill Williams," Essie Lee said, "My husband, Bill Smith, shot me."

Buster Richardson testified that he left his mother's home on Owasso to catch the bus at the corner of Owasso and Pine, and there he saw a man running across Pine to Owasso street; as the man passed witness asked him, "Is some one shooting up there?" and he said, "A man shot a woman"; that he could not say who the man was.

Herbert Friday testified that he was on the corner of Pine and Owasso on the night of April 29th and heard one shot and two more right after it, then a man came around that corner, and passed by him; one of the boys said, "Who was that shooting around there?" the man said, "Some man is shooting a woman," and the man was sticking a gun in his pocket, and that man was Bill Smith.

John Burnett testified that he was a deputy sheriff of Tulsa county; that the defendant, Willie Smith, was apprehended in Chicago, Ill.; and that he returned him from Chicago to Tulsa on the 9th of November, 1937.

This was substantially the state's case.

As a witness on his own behalf, the defendant testified that he was married to Essie Lee Smith July 5, 1934, in Tulsa; that in April, 1936, he was living at 511 North Detroit, Mrs. Watson's place, and had been working for the Oliver-Davis Oil Company eight or nine years, and quit work that evening around 7 o'clock; that his wife had called him up that afternoon, and said, "Come to my mother's tonight—I want to talk to you." That after quitting work he went out to his aunt's, Mrs. Chamberlain's house, dressed in a unionall suit and striped service cap. That he left there about 10 o'clock, and went on to see his wife at her mother's; that he came south on Owasso two blocks, then turned east to Peoria, and went down Peoria to Pine street, then turned west on Pine to Mrs. Tipton's home; that there were two men and a woman standing at the walk that leads into his home. One of the men said, "Here he is now," and made a pass at him; he grabbed this fellow, and two or three shots fired, and in the scuffle the other fellow hit him on the head; one shot hit him on the knee. The woman screamed and he recognized her as his wife. After the last shot he broke away and ran across the street and went south on Peoria to Eleventh street. There he caught a van and went on to St. Louis with this van. Bob Richardson was driving the van. They first stopped at Springfield, Mo., next morning about 10 o'clock.

There he treated the wound on his knee. After reaching St. Louis, he remained there about two hours, caught a bus, and went on to Chicago. There he was under treatment two weeks for the injury to his leg, then went to work and continued until he was arrested November 8th. That he did not resist returning with Mr. Burnett, deputy sheriff. That he never owned a pistol, and did not have a gun that night. That he did not see Flora Temer that night, and did not speak to any person after leaving there until he caught the van. That in Chicago he went under the name of Leroy Harris. That he did not know that his wife had been shot until his arrest in Chicago.

On the part of the defendant Mrs. Doveil Chamberlain testified that she is Willie Smith's aunt, lived at 2128 North Owasso, Tulsa. That her mother, her husband, two daughters, and two stepsons lived there with her. That Willie Smith came to her home that night just after dark and left there between 10 and 11 o'clock. On leaving he said he was going by to see Essie Lee, his wife. That she had telephoned him to come that night to see her. That he was wearing a work suit, coveralls.

Gladys Davis testified that she lives with her mother, Mrs. Chamberlain, and the defendant was out at their house that evening; left there a little after 10; that he was wearing a blue and white coverall suit.

Several character witnesses qualified and testified that the defendant's reputation as a peaceable law-abiding citizen in the community where he lived was good.

Durcilla Watson testified that she lived at 511 North Detroit; that the defendant lived at her place from about the 1st of December until April 30th; that his wife lived with him after they first moved there, and he continued to stay there after she left him.

In rebuttal Joe Smith testified that he saw Essie Lee Smith, early in the evening at her father's place, and later,

about 11:30, saw her getting off the bus on the corner of Peoria and Pine; that she went west on Pine, in the direction of her home, and a few seconds later he heard the three shots fired.

Walter Taylor testified that he was standing in the front door of Tipton's place and saw Essie Lee Smith, Mr. Tipton's daughter, get off the bus; that she walked west on Pine beside the building, then he heard the shots fired; that some one screamed just as the gun fired, and he ran around there and saw her lying on the sidewalk, then ran back to call the ambulance.

It follows from the foregoing review that the facts and circumstances of the case are sufficient to remove every rational doubt and convince the mind that the defendant is guilty of the offense as charged.

Counsel for the defendant contends that the court erred in admitting the testimony of the witnesses B. C. Tipton, father of the deceased, and Flora Temer, a next-door neighbor, as to statements made by deceased, "no proper foundation having first being laid therefor, a dying declaration, and the same being clearly no part of the res gestae."

Obviously, the statements testified to by the two witnesses were of the very highest importance in the case, and were clearly admissible as a part of the res gestae.

In Morehead v. State, 12 Okla. Cr. 62, 151 P. 1183, Ann. Cas. 1918C, 416, we said (page 1184) :

"On a trial for murder, declarations of the deceased made under such circumstances as will raise the reasonable presumption that they are the spontaneous utterances of thought created by or springing out of the homicidal act, and made so soon thereafter as to exclude the presumption that they are the result of premeditation and design, and without knowledge of which the principal fact might not be properly understood, are admissible as part of the res gestae."

In Dodd v. State, 29 Okla. Cr. 311, 233 P. 503, it is said:

"It is not possible to define the term 'res gestae' by any exact definition which will fit all cases. The term in a general way may be defined as the circumstances, facts, and declarations which grow out of the main fact and shed light upon it and tend to explain it, are voluntary and spontaneous, and made at a time so near, either prior or subsequent to the main act, as to exclude the idea of deliberation or fabrication."

And see Cook v. State, 27 Okla. Cr. 215, 226 P. 595; Chastain v. State, 46 Okla. Cr. 123, 287 P. 826.

A careful examination of the record fails to disclose any material errors in the rulings upon evidence or the instructions given by the court, and, giving due weight to every consideration urged by counsel for the defendant, our conclusion is that the defendant had a fair and impartial trial, and was properly convicted.

The judgment appealed from is therefore affirmed, and it is so ordered.

DAVENPORT, P. J., and BAREFOOT, J., concur.