**Frank Naceo MARTIN, Plaintiff in Error,**

v.

**The STATE of Oklahoma, Defendant in Error.**

**No. A–14699.**

Court of Criminal Appeals of Oklahoma.

Jan. 8, 1969.

Rehearing Denied Jan. 29, 1969.

Second Rehearing Denied Feb. 4, 1969.

Hamilton & Carson, Oklahoma City, for plaintiff in error.

Curtis P. Harris, Dist. Atty., James L. Swartz, Asst. Dist. Atty., for defendant in error.

BUSSEY, Judge.

Frank Naceo Martin was charged in the District Court of Oklahoma County with the crime of Murder. He was tried by a

jury who found him guilty of Manslaughter in the First Degree, and assessed his punishment at nine and one-half years in the State Penitentiary, and he appeals.

There are a number of assignments of error urged on appeal which we will treat in the order in which they occurred in the pre-trial proceedings and during the trial, and not necessarily in the order in which they were presented in the brief of the plaintiff in error, hereinafter referred to as defendant.

 Defendant contends that the trial court erred in refusing to sustain his Motion to Quash the information for the reason that the evidence adduced at the preliminary hearing was wholly insufficient to support the order of the magistrate binding the defendant over for trial in the District Court. From our examination of the preliminary hearing, we are of the opinion that the evidence was sufficient to establish that a crime had been committed and that there was probable cause to believe that the defendant committed the same. In an unbroken line of decisions by this Court, we have repeatedly held that:

> "Evidence on preliminary examination before magistrate on felony charge need not be sufficient to support conviction, but only to show that there is sufficient reason to believe defendant guilty thereof."

See Taylor v. State, 96 Okl.Cr. 1, 247 P.2d 749, and cases cited therein. We are therefore of the opinion that this assignment of error is without merit.

 It is next contended that the trial court was without jurisdiction to try the defendant for the reason that he could not, under the Federal Constitution, be tried for a capital offense unless he be tried under an indictment returned by a grand jury, as provided by the Fifth Amendment of the Federal Constitution. In support of this contention the defendant cites Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974, and other recent holdings of the Supreme Court of the United States, and urges that although they do not deal specifically with the question here presented, it logically follows that by virtue of the Fourteenth Amendment, the first ten amendments are made obligatory and binding on the states and that this being true, the pertinent portion of the Fifth Amendment, viz.:

> "No person shall be held to answer for a capital or otherwise infamous crime, unless on a presentment or indictment of a grand jury * * *."

makes it incumbent upon the states to prosecute such offenses only by indictment by a grand jury. The Supreme Court of the United States has never so held, nor do we believe that the procedural requirements limiting the Federal Courts in the Bill of Rights will be forced upon the states. As we view the holdings of the Supreme Court, we are constrained to believe that these decisions make obligatory upon the states only the substantive law, and constitutional protections safeguarding the rights of citizens of the United States. This question is neither new nor novel in this jurisdiction, for as early as In re McNaught, 1 Okl.Cr. 528, 99 P. 241, this Court, speaking through the Honorable Judge Doyle, dealt extensively with it and the Court's decision in In re McNaught, supra, has been uniformly upheld by this Court. For example, see one of our most recent holdings (1966), Sisson v. State, Okl.Cr.App., 426 P.2d 379. Accordingly, we hold this assignment to be without merit.

Defendant further contends that the trial court erred in refusing to grant his alternative Motion to Dismiss or grant a speedy trial. Defendant's motion appears in the casemade at pages 34–36, as follows:

> "Comes now the Defendant, Frank Naceo Martin, by and through his Attorneys, Hamilton and Carson, and respectfully represents and shows to the Court as follows:
>
> I
>
> That the Defendant is before this Court under Information charging him with the crime of murder, a Preliminary Informa-

tion having been filed against him during the July, 1966 term of this Court.

## II

That the Defendant has been incarcerated in the Oklahoma County Jail since the 22nd day of September, 1966 and has been denied the right to bail, and thereby being deprived of his liberty.

## III

That on or about the 24th day of January, 1967, being a day of the January, 1967 term of this Court, an Order was duly made and entered by this Court directing that said Defendant, Frank Naceo Martin, be brought to trial on this case on the 20th day of February, 1967.

## IV

That after the date of said Order of this Court, the District Attorney, Mr. Curtis P. Harris, did, without consideration of the rights of this Defendant, make and utter certain statements to the news media of Oklahoma County, which statements intimidate and prejudice the jurors who will be sworn to try this Defendant. A copy of the statements of the District Attorney as reported by the news media of Oklahoma City is attached hereto and marked exhibits 'A' and 'B'.

## V

That the Defendant desires his liberty, but must, under the present Orders of this Court, stand trial for the crime with which he is charged of having committed.

## VI

The Defendant fears that if he is not brought to trial on February 20, 1967, as previously Ordered by this Court, the Witnesses in this case may disappear, have a lapse of memory, become deceased, and evidence otherwise be dissipated to the end that justice will not be done and he will not receive a fair and impartial hearing.

## VII

That the Defendant cannot receive an unprejudiced and impartial trial by rea-

son of the intimidation of the jury panel by the said District Attorney.

WHEREFORE, to the end that justice be done, the Defendant, Frank Naceo Martin, prays this honorable Court dismiss the charge against him and order him released forthwith.

HAMILTON & CARSON, Attorneys for Defendant, Frank Naceo Martin."

█ The court's ruling on this Motion is not contained in the casemade, but we must assume that the court, acting under the allegation contained in paragraph IV, continued this case. In the defendant's brief there is set forth what purports to be the argument on the Motion, but this is not a proper part of the casemade and cannot be considered by this Court. We must assume that the court struck the case from the docket by reason of paragraph IV and the exhibits submitted in support thereof. We note that the Information was filed in the District Court of Oklahoma County on the 9th day of January, 1967, was originally set for the February docket from which it was stricken apparently for the reason set forth above. Title 22 O.S. § 812, provides:

"If a defendant, prosecuted for a public offense, whose trial has not been postponed upon his application, is not brought to trial at the next term of court in which the indictment or information is triable after it is filed, the court must order the prosecution to be dismissed, unless good cause to the contrary be shown."

Under the circumstances here presented we are of the opinion that the trial court properly struck the case from the docket, for if the allegations contained in paragraph IV and supported by exhibits were true, it would have been a useless waste of taxpayer's money and any conviction resulting from a verdict rendered by a jury selected from that panel would have required reversal.

Defendant contends that the court erred in overruling his Motion for Production, Inspection and Copying of Statements, Ex-

pert Materials and Reports and Information Favorable to the Defendant. This Motion was limited to the production of the autopsy report only, as all other items requested by the defendant were available to him because they were official documents of the State and open to public inspection. The autopsy report was the only item actually in the possession of the prosecution; however, in an examination of the proceedings had before Honorable Wendell Foster, Justice of the Peace, on the 4th day of January, 1967, which were made a part of the casemade as Exhibit "A," we find that the Court did allow the defendant to look at the autopsy report, and cross-examined Dr. Snoddy, the pathologist, extensively in regard to said report, after which the court ordered the report returned to the County Attorney.

■ It is thus apparent that prior to going to trial the defendant did, in fact, know the contents of the autopsy report and had extensively cross-examined the pathologist making the same. Certainly, this is all to which he was entitled, and we fail to see where the defendant was in any way denied access to it.

■ On May 11, 1967, counsel for defendant filed an application to commit defendant to a state institution for a period of 90 days observation and on this same day the judge entered an order committing the defendant to Eastern State Hospital at Vinita, Oklahoma. Defendant now contends that his sanity should have been determined by judicial function rather than by a branch of the executive power.

Title 22, O.S. § 1173 provides, as follows:

"If in the opinion of the doctors of said hospital, after the observation and examination as provided, such individual is presently sane, the order of the District Court suspending proceedings shall be dissolved, and the question of his present sanity shall not again be questioned until the calling of the indictment or information for trial."

In accordance with the above statute, we are of the opinion that the defendant's con-

tention is entirely without merit, for the statute says very specifically that after the doctors render their opinion, the question shall not again be raised until the indictment or information is called for trial. From the record it appears that the court acted under the statutory authority and in the manner prescribed thereby.

This case came on for trial on the 20th day of September, 1967. On the trial, Mrs. Asmie Littlejohn, a witness for the State, testified that she was a distant cousin of the decedent, and she lived a little more than a half block away from the home of the decedent. She stated that on September 17, 1966, at about 1:00 or 2:00 in the morning, she was at her home, in bed, when she was awakened by a scream, coming from her yard, asking for help. She ran to the front door and yelled, "Get out of my yard." She observed a man whom she did not recognize, walking from her flower bed on the left side of her yard. She turned on the porch light and the porch light of her next-door neighbor, Mrs. Alice Shepherd, was already on. At this point she stated that she came out of the house, after seeing the man leave, and found a lady lying in her yard, at which point she went back into the house and called the police. When asked if she recognized the lady she replied, (CM 193):

"I asked her who was she, and she say, 'I stay down the street.' I say, 'Honey, who is you staying down the street? I been here all my life, now, who is you?' And she said, 'Oh, you know me, Asmie; this is Pookie.' And I say, 'Who is Pookie?' And she say, 'Oh, you know Pookie, stay down the street here,' and that's the reason I know who she was."

She further stated that she stayed with the lady until the police arrived, together with her neighbor, Mrs. Shepherd; that the lady was very bloody so that she did not know her; that the decedent said that Frank Martin "had beat her up."

Alice Shepherd testified to essentially the same facts as did Mrs. Littlejohn, including the fact that the decedent said that

Frank Martin had assaulted her—all of which was within a few minutes after the attack had taken place. Counsel for defendant objected to the testimony of both these witnesses, the same was overruled, with exceptions allowed.

It is now contended that the court erred in admitting testimony concerning conversations held by certain witnesses with the deceased, and which were held to be a part of the res gestae.

In Dodd v. State, 29 Okl.Cr. 311, 233 P. 503, and cited with approval in Smith v. State, 64 Okl.Cr. 279, 79 P.2d 616, this Court stated:

> "It is not possible to define the term 'res gestae' by any exact definition which will fit all cases. The term in a general way may be defined as the circumstances, facts, and declarations which grow out of the main fact and shed light upon it and tend to explain it, are voluntary and spontaneous, and made at a time so near, either prior or subsequent to the main act, as to exclude the idea of deliberation or fabrication."

The Smith case, supra, is directly in point, and this Court held in substance, that in a murder prosecution, statements made by deceased to next-door neighbors that defendant shot her was admissible as "res gestae," where statement was made immediately after the next-door neighbor had rushed to the place where the deceased was lying, upon hearing shots and screams.

Defendant further contends that this error was compounded by the fact that the statements made by the decedent were in answer to questions propounded by the witnesses. Again, the Smith case, supra, is directly in point, for the testimony cited in that opinion reveals that a neighbor "rushed to the girl who was lying near the corner of her father's store building; that Mr. Tipton, the girl's father was there; that she was not personally acquainted with Bill Smith, but knew him as the dead girl's husband; that she said 'Essie Lee, is that you?' Essie Lee said, 'Yes—come get me —I am shot.' Witness said, 'Who shot you?' and Essie Lee said, 'Bill.' Witness said 'Bill who?' she said, 'Bill Williams— my husband shot me.'" In that opinion this court said:

> "Obviously, the statements testified to by the two witnesses were of the very highest importance in the case, and were clearly admissible as a part of the res gestae."

In considering the defendant's last assignment of error that the penalty prescribed in the verdict is excessive, we follow the rule that:

> "The Court of Criminal Appeals will not modify a sentence alleged to be excessive unless it is convinced from an examination of the entire record that the verdict and sentence based thereon was manifestly excessive and apparently given under passion and prejudice."

See Epperson v. State, Okl.Cr.App., 406 P.2d 1017 and Scobie v. State, Okl.Cr.App., 407 P.2d 610. In the case at bar the defendant received a sentence of nine and one-half years imprisonment in the State Penitentiary. In Sawyer v. State, 94 Okl. Cr. 412, 237 P.2d 167, in Syllabus No. 5, this Court held:

> "Sentence of fifty years imprisonment upon conviction of manslaughter in the first degree was not excessive."

We are of the opinion that the punishment imposed in this case was well within the range provided by law and is amply supported by the evidence and that this assignment of error is without merit.

It is further contended that the cumulative errors resulted in the jury imposing a greater punishment than would ordinarily have been imposed. The "cumulative" errors have been separately dealt with in this opinion and do not support this proposition.

For all of the reasons above set forth, the judgment and sentence appealed from is affirmed.

NIX, P. J., and BRETT, J., concur.