**Ralph B. ELLISON, Plaintiff in Error,**

**v.**

**The STATE of Oklahoma, Defendant in Error.**

**No. A–15985.**

Court of Criminal Appeals of Oklahoma.

Jan. 19, 1972.

Don Anderson, Public Defender, Oklahoma County, for plaintiff in error.

Larry Derryberry, Atty. Gen., Paul Ferguson, Asst. Atty. Gen., Paul Crowe, Legal Intern, for defendant in error.

SIMMS, Judge.

Plaintiff in error, Ralph B. Ellison, hereinafter referred to as the defendant, was charged by information in the District Court of Oklahoma County with the crime of Possession of Narcotics, After Former Conviction of a Felony. He was tried by a jury, found guilty, and his punishment assessed at Twenty Years in the penitentiary. From that judgment and sentence he has appealed to this Court.

From the record and transcript the facts of the case, briefly, are as follows: Officers C. R. Acox and Don Schimmels, Detectives with the Oklahoma City Police Department, testified that on December 24th, 1969, at approximately 1:05 P.M., they were attempting to turn into a driveway at 905 S.W. 29 Street, when the defendant and a companion, John Hartwell Hall, were attempting to exit by the same driveway. Both cars stopped, and Officer Acox testified as follows:

"Q. Would you tell the jury what the occasion was for you seeing the defendant in this particular driveway at that time?

A. Yes, sir. My partner and I were going East on Southwest 29th Street and we turned into this driveway and as we did we met a 1958 Ford Station Wagon coming onto 29th Street from this drive-

way and apparently the passenger in the right side of this automobile which was Mr. Ellison observed us and he became excited and stepped from it—

Q. Did you see this?

A. Yes, sir.

Q. All, right. Go ahead.

A. Then he opened the right front door of the station wagon and stepped out, at which time I did the same and I observed a small white object fall to the ground.

Q. All right, sir. Did you check the small white object?

A. Yes, sir.

Q. What was it?

A. I found it to be a white powdery substance which I felt to be narcotics.

Q. Was it in anything at the time you found it? Was the powdery substance contained in anything?

A. In a piece of white folded paper.

Q. All right, sir. Did you check this?

A. Yes, sir.

Q. All right, sir. Then, what if anything did you do after that, Officer?

A. I placed the Defendant and the driver of the automobile under arrest and searched the person of the Defendant and found in his right coat pocket a piece of newspaper which had been placed inside a cellophane bag that contained a needle and syringe.

Q. Then what if anything did you do, Officer?

A. They were both taken to the Police Station and booked in Jail and a Preliminary Field Test was conducted on the white powdery substance which showed positive for an opiate derivative."

Officer Schimmels testified substantially the same, stating that he observed the defendant open the door and reach down and throw a white object under the car, and that Officer Acox then went around to the side of the car where defendant was and picked it up.

John McAuliff, Chemist for the Oklahoma State Bureau of Investigation, testi-fied regarding the chemical analysis identifying the white powdery substance as "diacetyal-morphine or heroin * * * an opiate derivative."

The defendant did not testify nor was any evidence presented in his behalf.

Defendant was represented both at trial and on appeal by the Public Defender from Oklahoma County, and has filed several "briefs, etc." pro se.

■ Defendant's first contention of error is that he should have been sentenced under Title 21, O.S.1961, § 51, sub-paragraph (2), which would limit punishment to a maximum of ten (10) years, rather than under the provisions of Title 63, O.S.1961, § 420(a).

The information filed against the defendant alleged, specifically, on page one of the information, the offense of Unlawful Possession of Narcotics. Page two of the information alleged that defendant had previously been convicted of the specific offenses of Illegal Possession of Narcotic Drugs; Possession of Marijuana After Former Conviction of a Felony; Possession of Marijuana; and Failure to Pay Tax on Marijuana. The exhibits attached to the Transcript on file in this Court, and as offered by the state in support of the allegations made on page two of the information, clearly indicates the defendant had previously been convicted of the offense of Illegal Possession of Narcotic Drugs, and the offense of Possession of Marijuana After Former Conviction of a Felony. These two judgment and sentences were introduced in the punishment phase of the trial by stipulation of the parties and without objection of the defendant; and after a finding of guilty by the jury as to the allegations contained in the first page of the information.

Title 21, O.S.1961, § 11, controls this alleged assertion of error by reason of the following language contained within the statute:

"If there be in any other chapter of the laws of this state a provision making any specific act or omission criminal and pro-

viding the punishment therefor, * * * that offense and the punishment thereof, shall be governed by the special provisions made in relation thereto and not by the provisions of this penal code."

Title 63, O.S.1961, § 420, deals specifically with violations of the narcotic laws and provides specifically:

" * * * For a third or subsequent offense, or if the offender shall previously have been convicted two or more times in the aggregate of any violation of the law of the United States or of any other state, territory or District of Columbia relating to narcotic drugs or *marihuana*, the offender shall be fined not more than Five Thousand Dollars ($5,000.00) or be imprisoned not less than ten (10) or more than twenty (20) years." (Emphasis ours)

This Court, long ago, held that Title 21, O.S.1961, § 51, the statute under which defendant contends he should have been punished, does not create a new or define a different crime. Ex parte Bailey, 60 Okl.Cr. 278, 64 P.2d 278, which opinion has consistently been followed in subsequent decisions.

The record shows that no demand was made by defendant upon the state to elect under which statute they were proceeding. Therefore, the evidence adduced at trial brings the defendant exclusively under the provisions of Title 63, O.S.1961, § 420(a), and we find defendant's first contention wholly without merit.

Pro se briefs filed by defendant, after the perfection of this appeal raise the issue of the legality of the seizure of the narcotics at the time of his arrest on December 24, 1969. No objection was made by defense counsel or defendant at the time the contraband was introduced and received in evidence.

 An objection to evidence obtained, allegedly, by illegal search and seizure must be interposed at first opportunity and should be made either at beginning of trial by motion to suppress evidence or in the course of examination as soon as it becomes apparent that state will rely thereon, and defendant's failure to make timely objections waives right to be heard upon this question. Watson v. State, Okl.Cr., 382 P.2d 449. Defendant's formal demurrer to all of the evidence at the time the state rested their case in chief, is insufficient to raise the issue of illegal search and seizure. Watson v. State, supra.

Because the alleged illegal search and seizure, even though defendant by failing to object waived right to be heard, involves a constitutional question subject to possible future review in the Federal Courts or upon Application for Post Conviction Appeal, the issue of seizure of the narcotics in question will be herein discussed.

The arresting officers testimony, as detailed in this opinion, indicates the officer was in a public place where he had a lawful right to be, at which time he observed "a small white object fall to the ground" from the person of the defendant. It must be emphasized that no search of the person of the defendant was commenced until after the contents of the piece of paper had been examined, which examination gave rise to probable cause to arrest the defendant. It was only after the examination of the piece of paper that the officer affected the arrest and search of the person of the defendant.

The evidence relied upon by the State for conviction, therefore, was obtained after the defendant had abandoned same upon public premises, and before he was taken into custody.

 Such a fact situation is controlled by Trujillo v. United States, 294 F.2d 583 (10th Cir. 1961) which held:

"It is not a search to observe that which occurs openly in a public place and which is fully disclosed to visual observation."

*Trujillo*, supra, was cited with approval in *United States* v. *Von Roeder*, 435 F.2d 1004 (10th Cir. 1971) which held that a patrolman, whether or not he was authorized to arrest, was not violating the constitutional rights of an accused by retrieving items lying in full view at scene of apprehension, so that seizure of such items and their admission into evidence was not precluded by

Fourth Amendment, nor are the circumstances of that type of seizure remotely suggestive of the invasion of privacy in Chimel and similar cases.

Factually, there was no search here at all.

Defendant cites as authority for the illegal seizure of contraband, Graham v. State, No. A–15,318, opinion handed down by this Court on June 30, 1971. Graham v. State, is, at this writing, pending on a second petition for rehearing, no mandate has issued, and the opinion has not been finalized nor is the same binding as legal precedent.

Therefore, defendant's belated objection to the search and seizure is without merit whatsoever.

■ Defendant's third assignment of error is that the punishment is excessive. The defendant did, by his own actions, bring himself fully within the provisions of Title 63, O.S.1961, § 420(a), which authorizes a sentence of twenty years. Under the facts of this case, the punishment having been fixed by a jury after receiving proper instructions from the court, and the record of the case indicating the defendant has two unquestioned prior narcotics and marijuana convictions, we do not deem the sentence to be excessive.

Therefore, the judgment and sentence imposed by the trial court, in all respects, is hereby affirmed.

BUSSEY, P. J., concurs.

BRETT, Judge (specially concurring):

The facts of the instant case can be distinguished from those of Graham v. State, *supra*. In Graham, the officer's actions were motivated by "suspicion," a fact which they candidly admitted from the witness stand. In the instant case however, suspicion appears not to enter, until after defendant's action of disposing of the white packet occurred. The record is not clear concerning what caused the officers to drive into the prescription shop driveway, just when they did. One concludes that they were attempting to turn their car around to proceed in the opposite direction; or they were entering the shop area for some other legitimate reason; nonetheless, it appears that defendant became excited when he saw the police car and attempted to dispose of the packet. Officer Schimmels testified, when the prosecutor asked him to explain the occasion for him seeing the defendant, at the time, as follows:

"Yes sir, we were attempting to make a left turn into a driveway at 909 Southwest 29th. We observed a '58 Ford Station Wagon coming out of the driveway as we were attempting to pull in. The station wagon stopped and we stopped at the edge of the roadway. We saw the Defendant Ellison sitting on the passenger side of this station wagon and observed him open the door and *reach down and throw a white object under the car.* Officer Acox went around to the side of the car where Ellison was at and picked it up." (Emphasis added.)

Officer Schimmels testified further that the defendant was still in the car when he reached down and dropped the packet. At that point the officers had probable cause premised upon their training and experience, and from what they saw. They observed what they considered to be contraband, and were not acting out of suspicion alone. In Graham, the officers saw the vehicle make a "U-turn" and park along the north curb, stopped their car, and walked across the street to make inquiry *because they were suspicious.* No other reason was offered and no probable cause was apparent, until after they proceeded to detain the three men. Therefore, I clearly distinguish the instant case from that of Graham.

I am compelled to observe that the record before this Court fails to connect the syringe and needles with the defendant in any manner. The officers made no comment with reference to the syringe and needles wrapped in a newspaper, but no objections to the evidence were offered by the Public Defender when they were introduced. It is presumed that defense counsel informed the jury that the defendant is an "addict," in his closing argument. He was

charged with "possession" and not for the offense of making a "sale."

I concur that the conviction should be affirmed, but I feel under the facts of this case the sentence is excessive.