**George Allen BUFF, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–74–755.**

Court of Criminal Appeals of Oklahoma.

July 8, 1975.

Jack L. Shears, Jr., of Shears & Shears, Ponca City, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Judge:

Appellant, George Allen Buff, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Kay County, Case No. CRF–73–38, for the offense of Distribution of a Barbituric Acid Derivative, in violation of 63 O.S.1971, § 2–401(A)(1), After a Prior Conviction for the offense of Sale of LSD. His punishment was fixed at a term of thirty (30) years' imprisonment, and from said judgment and sentence a timely appeal has been perfected to this Court.

At trial, Norman Coffelt testified that he was the Sheriff of Kay County, Oklahoma, and was Sheriff on the first of March, 1973. He stated that he had called the Oklahoma State Bureau of Investigation and requested assistance in a narcotics investigation. He indicated that Agents Mel Sires and Harvey Pratt arrived in Ponca City at approximately 9:00 p. m. on March 1, 1973. After their arrival, Agent Pratt changed clothes, obtain-

ed another car and proceeded to a house where he picked up an informant and the two of them, along with the informant's child, proceeded to an apartment located at 518½ West Chestnut in Ponca City, Oklahoma. Sheriff Coffelt testified that he observed Agent Pratt park the car and then, along with the informant, go into the apartment. He stated that a few minutes later Pratt returned to the car and then went back into the apartment. After twenty-five minutes, Pratt and the informant returned to their car and left. The Sheriff followed them to another location where he got into their car. At this location, the Sheriff testified that he was shown some tablets in cellophane and Agent Pratt indicated that he would take these tablets to the laboratory for analysis.

Harvey Pratt testified that he was an agent for the Oklahoma State Bureau of Investigation and that he was the agent who had gone to Ponca City, Oklahoma on the first of March, 1973. His testimony was like that of Sheriff Norman Coffelt up to the time he entered the apartment at 518½ West Chestnut. He further testified that at the apartment the defendant opened the door and allowed him and the informant to enter. He stated that the defendant and Jay Countryman were in the apartment and he was introduced to them as the informant's ex-brother-in-law. He stated that after about five minutes in the apartment, he returned to the car to turn it off and get the child. Upon his return to the apartment, Countryman was sitting in the floor with small bags containing white objects in his lap. He then asked the defendant if he had any "coke." The defendant indicated that he did not, but he could get some; however, it was not of good quality. The informant then asked the defendant if he had anything to smoke and was told that all he had was in the bowl. At that time, a party behind a curtain threw out a baggie containing a green leafy substance. The defendant rolled some of this into a cigarette and passed it around. Agent Pratt then testified that the

defendant stated to Countryman, "Let me see one of those." [Tr. 29] and held out his hands as if to catch one of the plastic bags. Countryman then threw one of the bags to the defendant who looked at it and stated, "No, give me one that's already opened." Countryman then threw another bag and the defendant removed ten tablets and handed them to the informant who handed them to Agent Pratt. Pratt then asked how much for the pills and the defendant responded that there would be no charge for the first ten but any additional ones would be $15.00 per 100. Agent Pratt then asked for a container and Countryman gave him the cellophane off a pack of cigarettes into which Pratt placed the pills.

Agent Pratt and the informant then left the apartment and met Sheriff Coffelt. Pratt then placed the tablets in a crime bureau envelope, initialed it and sealed it. Agent Pratt then testified that he left Ponca City at approximately 11:30 p. m. He turned the tablets over to a Crime Bureau chemist the next morning. Pratt then identified State's Exhibit No. 1 as the evidence envelope into which he had placed the tablets. He also identified the cellophane wrapper and tablets inside the envelope as being those that he placed in the evidence envelope.

John McAuliff testified that he was Chief Chemist for the Oklahoma State Bureau of Investigation. He identified State's Exhibit No. 1 as the envelope that he received from Agent Harvey Pratt on March 2, 1973. He stated that an initial screening indicated that the tablets contained a barbituric acid derivative. He testified that he completed his analysis on March 5, 1973, by conducting an ultra violet spectrophotometric analysis which conclusively indicated that the tablets contained a barbituric acid derivative.

In the second stage of the trial proceeding, Hazel Wood testified that she was the Kay County Court Clerk and that she was Court Clerk when CRF–71–30 was litigated. No. CRF–71–30 is the case relied upon as defendant's prior conviction. She indi-

cated that that case resulted in a conviction and she also identified the defendant in the instant case as the defendant in that case.

Sheriff Norman Coffelt testified that he was Sheriff when Case No. CRF–71–30 was brought to trial. He identified State's Exhibit No. 2 as the record from that case and identified the Journal Entry of Judgment from that record as that which ordered him, as Sheriff of Kay County, to transport the defendant in that case to the Department of Corrections. Sheriff Coffelt then identified the defendant in the instant case as the individual that he delivered to the Department · of Corrections in compliance with the Journal Entry of Judgment in Case No. CRF–71–30.

Defendant asserts that the trial court erred in allowing testimony relating to conversations concerning other drugs and the furnishing of a cigarette made from a green leafy substance.

■ The testimony that is complained of relates to incidences occurring contemporaneously with the main act and in this circumstance was part of the res gestae. This Court stated in *Dodd v. State*, 29 Okl. Cr. 311, 233 P. 503 (1925), in the first paragraph of the Syllabus:

"It is not possible to define the term 'res gestae' by any exact definition which will fit all cases. The term in a general way may be defined as the circumstances, facts, and declarations which grow out of the main fact and shed light upon it and tend to explain it, are voluntary and spontaneous, and made at a time so near, either prior to subsequent to the main act, as to exclude the idea of deliberation or fabrication."

See *Vassaur v. State*, Okl.Cr., 514 P.2d 673 (1973); *Martin v. State*, Okl.Cr., 449 P.2d 275 (1969); and *Smith v. State*, 64 Okl.Cr. 279, 79 P.2d 616 (1938).

Furthermore, the record reflects that the trial court admonished the jury as to the testimony complained of, and finding it admissible as "res gestae" we find this assignment of error to be without merit.

■ Defendant further asserts that his prior conviction was improperly used to enhance punishment as he was between the ages of sixteen and eighteen at the time he sustained the prior conviction. This issue was answered in our decision in *Dean v. State*, Okl.Cr., 536 P.2d 961 (1975), and the cases cited therein. We, accordingly, find this assignment of error to be without merit.

■ Defendant also asserts that the trial court's instruction on punishment was erroneous. We agree. The record reflects that in the second stage of the proceedings, the jury was instructed under the provisions of 21 O.S.1971, § 51, that the minimum punishment in this matter was ten (10) years imprisonment. The Information reflects that the defendant was charged with Unlawful Distribution of a Barbituric Acid Derivative, After Former Conviction of the offense of Sale of LSD. This Court, in *Wood v. State*, Okl.Cr., 515 P.2d 245 (1973), quoted the first paragraph of the Syllabus in *Ellison v. State*, Okl.Cr., 493 P.2d 837 (1972), stating:

"Where information for Possession of Narcotics alleges two or more convictions for violations of narcotic or marijuana law, defendant is subject to punishment prescribed under specific legislation relating to narcotics, and not habitual criminal statute."

The court should have instructed the jury that the punishment for the offense charged was not less than four (4), nor more than twenty (20) years' imprisonment. See 63 O.S.1971, amend.1972, §§ 2–401(B)(2), and 2–401(C).

■ Defendant lastly contends that it was improper for the prosecuting attorney to make prejudicial remarks in the closing argument during the second stage of the two-stage proceeding, which were not supported by competent evidence. We note that no objection was interposed to these

remarks, and present nothing for review on appeal, and although they, standing alone, would not constitute grounds for modification or reversal, in light of the record before us, and in view of the erroneous instruction given, we are of the opinion that the ends of justice would best be served by modifying the judgment and sentence from a term of thirty (30) years' imprisonment, to a term of twelve (12) years' imprisonment, and as so modified, the judgment and sentence is affirmed. *Modified and affirmed.*

BLISS, J., concurs.

BRETT, P. J., specially concurs.

BRETT, Presiding Judge (specially concurring).

I concur that this conviction should be affirmed, but I would modify the sentence to ten (10) years imprisonment.