Larry Earl JOHNSON, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–76–616.

Court of Criminal Appeals of Oklahoma.

Jan. 7, 1977.

Don Anderson, Public Defender, Oklahoma County, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., John J. Powers, Legal Intern, for appellee.

## OPINION

BRETT, Presiding Judge:

Appellant, Larry Earl Johnson, hereinafter referred to as the defendant, was charged in the District Court, Oklahoma County, Case No. CRF–75–2691, for the offense of Distribution of a Controlled Dangerous Substance, Amphetamine, After Former Conviction of a Felony, in violation of 63 O.S.Supp.1975, § 2–401. The defendant was represented by counsel and tried before a jury, and convicted of the aforementioned crime. His punishment was fixed at fifteen (15) years' imprisonment. From said judgment and sentence a timely appeal has been perfected to this Court.

The first witness for the State was Harold Spraggins, an undercover narcotic agent for the State Bureau of Narcotics, Oklahoma City, at the time the offense in question took place, July 2, 1975. On that date, the witness, Agent Troy Leathers, and a confidential informant used in the case, proceeded to 504 N. Marshall, Oklahoma City, Oklahoma, where the witness purchased a quantity of amphetamines from a person whom he identified in the courtroom as the defendant. The witness testified that after gaining entrance into the residence, the informant asked the defendant if he had any "speed" for sale. The defendant stated that he did, and went into another part of the house, returning with a small plastic bag containing the tablets. Agent Spraggins stated that the defendant immediately handed the bag to Agent Leathers, who in turn handed it to him, (Agent Spraggins). The witness then gave the defendant the agreed price of $150.00 as payment for the tablets and the defendant placed the money in his right front jeans' pocket.

Agent Spraggins further testified that he had a conversation with the defendant at that time concerning possible purchases of amphetamines and cocaine at a later date. The witness identified the plastic bag, (Exhibit No. 2), containing the amphetamine tablets as that which he purchased from the defendant on the day in question, and also a photograph of the defendant taken on the day he was arrested as an adequate representation of what the defendant looked like at the time the purchase was made.

Agent Troy Leathers, agent with the Oklahoma Bureau of Narcotics, Oklahoma City, was the second witness for the State. He testified that he was with Agent Spraggins at the time of the purchase. Agent Leathers testified to substantially the same facts that Agent Spraggins had testified to earlier.

The defendant stipulated that if a chemist for the Narcotics Bureau were present he would testify that the substance in Exhibit No. 2 was amphetamines.

At that point the State rested its case. The defendant's demurrer and motion for directed verdict were overruled.

The defendant's first witness was Freddie Tubb; Mr. Tubb testified that he had known the defendant for five or six years, and that the defendant was always truthful, loyal and kind.

The defendant then testified in his own behalf, stating his educational and employment background, and also stating he was honorably discharged from the Army after serving in Viet Nam. The defendant's two previous convictions for possession of marijuana, and possession of marijuana and amphetamines, after former conviction of marijuana were entered into evidence.

The defendant's testimony as to the transaction at the residence conflicted with that of Agent Spraggins. The defendant testified that on July 2, 1975, he and one John McClain were at his, (the defendant's) house at approximately 3:15 p.m., when there was a knock on the door. Shortly, Randall Crane, whom the defendant had known in school, entered with the two agents. Randall Crane asked the defendant if he had any speed and the defendant answered no. McClain then said that he

(McClain) did have. McClain asked the defendant to step into another room and asked if he knew Randall Crane or the other "guy," to which the defendant replied he knew Crane but not the other. McClain and the defendant then returned to the front room where McClain "handed it to me and told me to give it to them, so I handed it to Randall Crane and Crane then turned around and gave it to Spraggins who in turn handed it to the other man, Troy Leathers." The defendant stated that when Agent Spraggins attempted to hand him the money for the amphetamines, he (the defendant) said, "no, it's not mine, don't hand it to me." The agent tossed the money down and to the best of the defendant's knowledge, no one picked up the money at that time. The defendant denied getting any of the money involved, he also denied that the "stuff" was his. The defense then rested.

The defendant's only assignment of error is that the jury was improperly instructed under the Habitual Criminal Act, 21 O.S. 1971, § 51, rather than the specific enhancement legislation relating to narcotics, 63 O.S.Supp.1975, § 2–401. We agree.

Title 21, Oklahoma Statutes, 1971, Section 11 controls this assignment of error by reason of the following language:

> "If there be in any other chapter of the laws of this state a provision making any specific act or omission criminal and providing the punishment therefor, and there be in this penal code any provision or section making the same act or omission a criminal offense or prescribing the punishment therefor, that offense and the punishment thereof, shall be governed by the special provisions made in relation thereto, and not by the provisions of this penal code."

The special provisions governing in the case at bar are 63 O.S.Supp.1975, § 2–401(B)(2) and (C), and 63 O.S.1971, § 2–412. Title 63, Oklahoma Statutes, Supp., 1975, Section 2–401 reads as follows:

> "B. Any person who violates this section with respect to:

> "* * * *

> "2. Any other controlled dangerous substance classified in Schedule I, II, III, or IV is guilty of a felony and shall be sentenced to a term of imprisonment for not less than two (2) years nor more than ten (10) years and a fine of not more than Five Thousand Dollars ($5,000.00). . .

> "* * * *

> "C. Any person convicted of a second or subsequent violation of this section is punishable by a term of imprisonment twice that otherwise authorized and by twice the fine otherwise authorized."

Title 63 O.S.1971, § 2–412 reads as follows:

> "An offense shall be considered a second or subsequent offense under this act, if, prior to his conviction of the offense, the offender has at any time been convicted of an offense or offenses under this act, under any statute of the United States, or of any state relating to narcotic drugs, marihuana, depressant, stimulant, or hallucinogenic drugs, as defined by this act."

Considering these statutes, it was plainly error for the trial judge in this case to instruct the jury under the Habitual Criminal Act, in which the minimum penalty is ten (10) years imprisonment rather than the penalty set out under 63 O.S.Supp.1975, § 2–401(C), which, in this case, would be four (4) to twenty (20) years and a fine of not more than Ten Thousand ($10,000.00). This has long been the position of this Court. *Ellison v. State*, Okl.Cr., 493 P.2d 837 (1972); *Wood v. State*, Okl.Cr., 515 P.2d 245 (1973); *Patterson v. State*, Okl.Cr., 527 P.2d 596 (1974); *Buff v. State*, Okl.Cr., 538 P.2d 1117 (1975); *Holloway v. State*, Okl. Cr., 549 P.2d 368 (1976).

On extensive review of the record before us, we feel that the defendant has received a fair and impartial trial, but, in view of the erroneous instruction given by the trial judge, it is our opinion that the ends of justice would best be served by modifying the judgment and sentence from a term of fifteen (15) years imprisonment, to a term of ten (10) years imprisonment, and as so

*MODIFIED*, the judgment and sentence is *AFFIRMED*.

BUSSEY and BLISS, JJ., concur.